FANNIE LOU JACKSON AND CULBERT JACKSON, HER HUSBAND, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS, v. MUHLENBERG HOSPITAL, A CORPORATION, AND EASTERN BLOOD BANK, A CORPORATION, DEFENDANTS - RESPONDENTS AND CROSS - APPELLANTS, AND ESSEX COUNTY BLOOD BANK, A CORPORATION, DEFENDANT.

Argued December 2, 1968—Decided January 20, 1969.

*Mr. Irwin B. Seligsohn* argued the cause for plaintiffs (*Messrs. Balk, Jacobs, Goldberger & Mandell*, attorneys).

*Mr. Thomas T. Chappell* argued the cause for defendant Muhlenberg Hospital (*Messrs. Lamb, Blake, Hutchinson & Dunne*, attorneys).

*Mr. Eugene M. Purcell* argued the cause for defendant Eastern Blood Bank (*Messrs. Stevens & Mathias*, attorneys).

PER CURIAM. Mrs. Jackson was hospitalized at Muhlenberg Hospital during March, 1964. While there she was operated upon and received five blood transfusions. The blood for four of the transfusions was received by the Hospital from the Eastern Blood Bank and the blood for the fifth transfusion was received by it from the Essex County Blood Bank. Mrs. Jackson contracted hepatitis which she attributed to the transfusions. She and her husband sued the Hospital, the Eastern Blood Bank and the Essex County Blood Bank, charging them with negligence and with breach of an implied warranty of merchantability and fitness. The Hospital and the Eastern Blood Bank each moved for summary judgment but no such motion was filed on behalf of the Essex County Blood Bank.

The sketchy record before us discloses how little was the material furnished to the trial court in connection with the motions. An affidavit by the Medical Director of the Eastern Blood Bank set forth that two of the four units sent by it to the Hospital were received from two named individual donors and that the other two units were received from the Interstate Blood Bank of Memphis which, in turn, had received them from two named individual donors. Attached copies of questionnaires bore checkmark answers by the donors to inquiries as to their previous illnesses but contained little or nothing in the way of background information. The Director asserted flatly that "there was no

known test available to medical science to determine whether or not human blood contained the virus of Homologous Serum Hepatitis"; and he noted that each bottle of blood transferred by Eastern to the Hospital had attached to it a legend reading as follows: "Despite the utmost care in the selection of donors, human blood may contain the virus of Homologous Serum Hepatitis. Therefore Eastern Blood Bank does not warrant against its presence in this blood." But the Director did not elaborate on any testing efforts which have been made to date nor did he spell out the nature of Eastern's operation, the type of neighborhood in which its premises are located, the type of donors to which it caters, or the precautionary steps it takes. See *Hoder v. Sayet*, 196 *So. 2d* 205, 208–209 (*Fla. Ct. App.* 1967). Nor did he deal at all with the respective incidences of hepatitis in blood obtained from commercial blood banks and other sources, though studies on this and related aspects of the entire hepatitis problem have heretofore been available and are currently being made available with increasing frequency. See Garibaldi, "A New Look at Hospitals' Liability for Hepatitis Contaminated Blood on Principles of Strict Tort Liability," 48 Chi. Bar Rec. 204 (1967); "Medical Judgment vs. Legal Doctrine," 49 Chi. Bar Rec. 22 (1967).

The Eastern Blood Bank is engaged in business for profit. It pays eight dollars per pint to donors and charges hospitals eighteen dollars per pint. The Muhlenberg Hospital is a nonprofit corporation. It charges its patients twenty-five dollars per pint plus twenty dollars for each transfusion. It states that its charge "is purposely made high in order to provide an incentive for blood recipients to have a friend or relative donate a unit of blood which is then applied to offset the charge" and that "this is considered desirable in order to avoid the necessity of purchasing blood from commercial blood banks who generally use indigent donors for their blood." But the record does not contain anything to indicate that it notifies the patient of the stated reason for its high charge or of the inherent dangers and the legends

accompanying the containers of blood purchased from commercial blood banks.

Despite the meagre nature of the evidence before it, the trial court entertained the motions, made findings, and granted partial summary judgments. It found that Eastern and the Hospital owed the plaintiffs a duty of due care and that the plaintiffs could recover for any harm resulting from the negligence of Eastern and the Hospital; that Eastern had expressly warranted that it would use the utmost care in the selection of donors and that if there was a breach of this warranty the plaintiffs could recover for any resulting harm to them; that the presence of hepatitis virus in the blood furnished to Mrs. Jackson did not give rise to any cause of action sounding in implied warranty or strict liability in tort; and that Eastern and the Hospital were entitled to partial summary judgments on the plaintiffs' claims insofar as they were based "on strict liability and implied warranty." See *Jackson v. Muhlenberg Hospital*, 96 *N. J. Super.* 314 (*Law Div.* 1967). The plaintiffs appealed to the Appellate Division from the partial summary judgments in favor of Eastern and the Hospital and cross-appeals were taken by Eastern and the Hospital from the trial court's refusal to grant full summary judgments against the plaintiffs. We certified while the case was awaiting argument in the Appellate Division.

During oral argument we were told that the Appellate Division had advised the parties that the trial court's order was not a final judgment but was interlocutory and appealable only with leave. Thereupon, the plaintiffs purportedly abandoned all claims against Eastern and the Hospital, other than the warranty or strict liability claim, as well as their entire claim against the Essex County Blood Bank. This was evidently done with a view towards obtaining a broad academic ruling on the issue of whether a commercial blood bank and a hospital may be held accountable on the basis of implied warranty or strict liability where their furnishing of blood containing viral hepatitis has resulted in consequen-

tial injury to the complaining party. The issue is a very important one involving highly significant policy considerations and obviously should not be decided on the wholly inadequate record before us. See *Community Blood Bank, Inc. v. Russell,* 196 *So. 2d* 115 *(Fla.* 1967) ; 2 *Frumer & Friedman, Products Liability,* 3–49, *et seq.* (1968) ; *Parker, Horn, King and Trieber, Torts,* 1967 *Annual Survey of American Law* 191, 212–218; *cf. Public Service Commission of Utah v. Wycoff Co.,* 344 *U. S.* 237, 243, 73 *S. Ct.* 236, 240, 97 *L. Ed.* 291, 296 (1952) : "A Maximum of caution is necessary in the type of litigation that we have here, where a ruling is sought that would reach far beyond the particular case."

In the factual situation presented here, the plaintiffs' cause of action would traditionally be grounded on principles of negligence and accordingly their complaint contained appropriate allegations that the defendants had failed to exercise due care with consequential injury to the plaintiffs. The purported abandonment of their negligence claims, as well as their claim against the Essex County Blood Bank, could not under the circumstances have been in their real interests. We are satisfied that it should now be vacated and that the entire matter should proceed to trial. To that end the partial summary judgments are set aside and the plaintiffs' claims on their alternative theories against all of the parties including the Essex County Blood Bank are reinstated. At the trial, a complete record should be made, including not only detailed testimony as to the nature of the defendants' operations, but also expert testimony as to the availability of any tests to ascertain the presence of viral hepatitis in blood, the respective incidences of hepatitis in blood received from commercial blood banks and other sources, and such other available testimony and materials as may be relevant to any of the questions presented by the parties, including such economic and other factors as may bear on the question of whether the doctrine of implied warranty or strict liability should apply to deliveries and

transfusions of blood. If, at the close of the case, submission to the jury is called for, the trial court may, if it considers such course appropriate, obtain written findings on each issue of fact along with the general verdict. *R. R.* 4:50.

Reversed and remanded.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For affirmance* — None.