260 N.J. Super. 1 (1992)
614 A.2d 1355
CELESTE D'ALIA, PLAINTIFF-APPELLANT,
v.
ALLIED-SIGNAL CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1992.
Decided October 20, 1992.
*3 Before Judges BILDER, BAIME and WALLACE.
Michael K. Fielo argued the cause for appellant (Roberts, Pedicini & Fielo, attorneys; Stephen M. Higgins on the brief).
Theresa Donahue Egler argued the cause for respondent (Pitney, Hardin, Kipp & Szuch, attorneys; Ms. Egler on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents novel questions under the Family Leave Act (N.J.S.A. 34:11B-1 through -16). The Act guarantees the right of an employee to take a period of leave upon the birth of a child or other family emergency without incurring the risk of losing his or her employment. Upon the expiration of the leave, the employee is entitled to be restored to his or her former job or to an equivalent position.
Pregnant with her second child, plaintiff Celeste D'Alia apprised her employer Allied-Signal Corporation of her intent to take disability and maternity leave under the company's health insurance plan. She claims that she was demoted when she attempted to return to her position following her recuperation from a cesarean section. Plaintiff instituted this action to recover compensatory and punitive damages as well as attorney's fees under the Act. Although discovery had not yet been completed, the Law Division granted defendant's motion for *4 summary judgment. The court determined that plaintiff's request for disability entitlements and maternity leave did not constitute adequate notice of an intention to invoke her rights under the Act. Alternatively, the court found as a matter of law that plaintiff was offered an equivalent position. We reverse.

I.
Because this case was decided in summary fashion, the record before us is somewhat meager. Plaintiff commenced her employment with defendant on a temporary basis while attending college. After her graduation in 1981, she was hired as a full-time employee. Plaintiff initially held the position of Coordinator of the Personnel Resource Data Center at a salary of $14,500. In 1984, she obtained a lateral transfer to the position of Specialist  Stock Options at a grade 6 compensation level. Plaintiff continued in that position until 1986, when she was promoted to the position of Supervisor  Stock Options. Her compensation increased commensurately to a grade 8 level. After plaintiff's first pregnancy, she returned to her position and shortly thereafter was promoted to a salary grade 10 position based upon her assumption of additional duties involving defendant's Section 401(K) savings plan. At that point, her job title became Supervisor  Special Compensation and her salary increased to $43,600.
Effective February 1, 1990, plaintiff formally assumed supervisory responsibility for administering executive compensation. The former supervisor had been promoted and was about to be reassigned to another office. This organizational change was discussed with plaintiff in late December 1989 and was formally announced in two directives issued on January 9, 1990. In her new role, plaintiff had supervisory responsibility over two additional employees. According to plaintiff's deposition testimony, she was promised that she would be promoted to a salary grade 11 as soon as her predecessor assumed her new assignment. *5 Although the evidence is conflicting, plaintiff claims she was told that her salary would be increased and that it "was just a matter of paperwork."
At that point, plaintiff suffered complications in her pregnancy and requested a maternity leave of absence on May 16, 1990. Based on a disability certification by plaintiff's doctor, defendant anticipated that this leave would continue through September 1990. In addition to signing the company's health insurance disability form, plaintiff engaged in several conversations with her immediate supervisor. These discussions apparently concerned the manner in which other employees would assume plaintiff's responsibilities in her absence. In particular, it was agreed that administrative responsibility for executive compensation would be temporarily assigned to an employee then under plaintiff's supervision. Plaintiff fully expected that this "highly visible" and important function would be returned to her following expiration of her leave.
On July 12, 1990, however, plaintiff, who was still convalescing, was told that her former male subordinate would retain the responsibility for executive compensation upon her return. Plaintiff objected to the reassignment of her supervisory responsibilities and alleged that she was the victim of discrimination. In a series of letters, defendant's Director of Human Resources asserted that the staffing change was made out of business necessity and had nothing to do with plaintiff's pregnancy. He further noted that the company intended to reinstate plaintiff to a position having the same grade and salary as her former job. Defendant later offered plaintiff a choice of two positions: Supervisor  Corporate Payroll or Supervisor  Special Compensation. Both positions carried the same salary grade level 10, but did not include executive compensation duties and supervisory responsibilities over the same number of employees as plaintiff's former position. Plaintiff continued to object, claiming that the positions offered by defendant involved only "half of [her former] job," and no opportunity for advancement. Moreover, under the staffing change, plaintiff *6 was to report to an employee who had previously been under her supervision. The employee was later promoted to a salary grade 11 level. When defendant refused to correct these problems, plaintiff resigned and commenced this action.
It is against this factual backdrop that we consider plaintiff's arguments. Plaintiff contends that her request for disability benefits emanating from her pregnancy and for maternity leave was sufficient to place defendant on notice of its obligations under the Act. She also claims that genuine issues of material fact exist concerning whether she was offered an equivalent position following expiration of her family leave.

II.
A brief description of the Act and its legislative history is necessary for a complete understanding of the questions presented. The Act was adopted in 1989 and represents the culmination of a comprehensive legislative effort to maintain the integrity of the family unit and promote flexibility and productivity in the work place. The purpose of the legislation is to adjust public and private policy to accommodate the changing needs of the modern family.
This objective is clearly articulated in the legislative findings and declarations. Citing the well-documented increase in the number of families in which all adults are employed outside of the home, the Legislature observed that "many individuals are forced to choose between job security and parenting or providing care for ill family members." N.J.S.A. 34:11B-2. The Legislature found it necessary "to promote the economic security of families by guaranteeing jobs to wage earners who choose to take a period of leave upon the birth ... of a child or serious health condition of a family member." Ibid. The purpose was to permit employees to contend with problems common to all family members "without risk of termination of employment or retaliation by employers and without loss of certain benefits." Ibid.
*7 In furtherance of this objective, the Act provides that employees with a newly born, adopted or ill child or a sick parent or spouse may take family leave from employment for a period not to exceed 12 weeks during any 24 month period. N.J.S.A. 34:11B-3i; N.J.S.A. 34:11B-4. In the case of a newly born or adopted child, leave may be commenced at any time within one year of the date of birth or placement by adoption. N.J.S.A. 34:11B-4c. As to an ill family member, leave may be taken intermittently when medically necessary. N.J.S.A. 34:11B-4a(1), (2) and (3). With respect to a newly born or adopted child, leave may be taken intermittently only if agreed to by the employer and employee. N.J.S.A. 34:11B-4b. Family leave required by the Act may be paid, unpaid or a combination of the two. N.J.S.A. 34:11B-4d. If an employer provides paid leave for fewer than 12 work weeks, the additional period required by the Act may be unpaid. Ibid. Leave may be denied only where (1) the employee falls into a narrow category of highly salaried individuals, N.J.S.A. 34:11B-4h(1), (2) denial is necessary to prevent "substantial and grievous economic injury" to the employer's operation, N.J.S.A. 34:11B-4h(2), and (3) timely notice is given to the employee, N.J.S.A. 34:11B-4h(3).
In addition to the 12 week period, the Act provides job security for employees by requiring that they be "restored by the employer ... to the position [they] held when the leave commenced or to an equivalent position of like seniority, status, employment benefits, pay, and other terms and conditions of employment." N.J.S.A. 34:11B-7. The only exception granted by the Act is where during the leave period a reduction in force has occurred and the employee would have lost his or her job in any event. Ibid. However, even in the case of a reduction in force, the employee retains all rights to a recall that he or she would have had if he or she had not taken the leave. Ibid. The Act also requires the employer to continue group health insurance coverage to the employee and his or her dependents as if leave had not been taken. N.J.S.A. 34:11B-8. The Act makes it clear that the right to family leave is in addition to those *8 granted under the Temporary Disability Benefits Law (N.J.S.A. 43:21-25 through -55). Under the Law, pregnancy is treated like any other medically justifiable condition that prevents an employee from performing her job. As a result, a pregnant employee is entitled to receive partial wage replacement. N.J.S.A. 43:21-29. Family leave provided under the Act has a different purpose. While New Jersey has long been "generous in granting paid disability leave to virtually all working women who are physically unable to work after pregnancy," the Act is intended to "fill the gap" and "expand job protection to men and women who want to take time off ... to care for their young child" after the physical toll of pregnancy dissipates. Thomas H. Kean, "The State's Role in the Implementation of Infant Care Leave," in The Parental Leave Crisis, 233, 236 (Edward Zigler and Frank Meryl, eds.) (1988).
In order to invoke the rights granted by the Act, an employee must give "advance notice" to the employer. N.J.S.A. 34:11B-4. The Act further provides that "[i]n any case in which the necessity for leave ... is foreseeable, based upon an expected birth or placement of the child for adoption, the employee shall provide the employer with prior notice in a manner which is reasonable and practicable." N.J.S.A. 34:11B-4f. Employers must display "conspicuous notice" of the rights accorded by the Act, "and use other appropriate means to keep its employees so informed." N.J.S.A. 34:11B-6. The Act is otherwise silent with regard to the subject of notice.
Among the enforcement mechanisms provided in the Act is the assessment of a penalty not to exceed $2,000 for a first violation or $5,000 for each subsequent offense. N.J.S.A. 34:11B-10. An aggrieved employee may additionally institute suit for compensatory and limited punitive damages, as well as attorney's fees. N.J.S.A. 34:11B-11. To avoid disruptions, the Act provides a four year phase-in period depending upon the number of individuals employed. N.J.S.A. 34:11B-3f; see also Governor's Reconsideration and Recommendation Statement, Senate No. 2035, L. 1989, c. 261.

*9 III.
We now turn to plaintiff's contention that she gave adequate "advance notice" to invoke the rights granted by the Act. In reaching the opposite conclusion, the Law Division judge emphasized that plaintiff "took leave based on the disability entitlements ... in place at defendant's place of business" and "had no intention of exercising the rights granted to her by the Family Leave Act."
In our view, the judge focused too narrowly on the question of plaintiff's intention in determining whether the notice she provided to defendant was sufficient to invoke her rights under the Act. Instead, the appropriate inquiry was whether the information given was sufficient to alert defendant of plaintiff's plan to take time off for a purpose delineated by the Act. We deem the notice provision satisfied where the employee requests a leave of absence for any of the reasons identified in N.J.S.A. 34:11B-3i. In other words, an employer must grant an employee all of the rights accorded by the statute once the employee apprises it of his or her desire to take a family leave because of (1) the birth or adoption of a child, or (2) the serious health condition of a family member. The function of notice is to enable the employer to plan for the employee's absence and ultimate return. The precise form in which this information is conveyed is not dispositive and there are no magic words that must be used. Rather, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a reason specified in N.J.S.A. 34:11B-3.
Our interpretation of the notice provision comports with the plainly expressed statutory design. As we noted previously, the principal objective of the Act is to enable employees to avoid the dilemma of having to choose between job security and important family obligations. The Act does not require employees to have an encyclopedic knowledge of their legal rights in order to invoke the benefits of family leave and job protection. *10 Rather, the focus is upon the employer and its obligations. We regard it as highly significant that employers must not only display notice of its employees' rights and obligations, but also must "use other appropriate means to keep its employees so informed." N.J.S.A. 34:11B-6. The rights and benefits granted by the Act should not depend on the sophistication of the employee. It is incumbent upon the employer to apprise the employee of his or her rights and to effectuate them once the employee requests a leave of absence for any of the reasons provided by the Act.
Applying these principles, we find that plaintiff's request for disability benefits and maternity leave constituted sufficient notice to alert defendant of its responsibilities under the Act. The disability forms completed by plaintiff as well as her job-related discussions with her superior were enough to apprise defendant of the employee's intention to take time off from work for the birth and care of her child. We do not quarrel with the Law Division judge's finding that plaintiff was apparently ignorant of her rights under the Act and did not specifically intend to invoke them. The overriding fact remains that plaintiff told defendant in a variety of ways that she needed time off from work to perform a family-related duty protected by the Act. If defendant harbored doubts concerning the situation or had any questions, the employer should have asked. It did not have the right to sit idly by without further inquiry.
The result we reach is mandated by the public policy considerations identified in the Act, N.J.S.A. 34:11B-2, and the express statutory language, N.J.S.A. 34:11B-4f; N.J.S.A. 34:11B-6. Although this legislation has been characterized as "revolutionary" and as "anathema to many employers," Thomas H. Kean, "The State's Role in the Implementation of Infant Care Leave," in The Parental Leave Crises, at 338, its wisdom is not for us to decide. By enacting the statutory scheme, the New Jersey Legislature has embarked upon an experiment having *11 national ramifications. We are obliged to apply the Act consonant with its expressed purpose and language. In that context, we are thoroughly convinced that plaintiff's request for leave provided defendant with "advance notice" and that the employer was duty-bound to fully comply with its statutory obligations.

IV.
We also conclude that the documentary submissions and deposition testimony raised genuine issues of material fact concerning whether defendant complied with its obligation to restore plaintiff to the position she held when the leave commenced or to an equivalent position "of the same seniority, status, employment benefits, pay, and other terms and conditions of employment." N.J.S.A. 34:11B-7. Viewing the evidence in a light most favorable to plaintiff, a reasonable trier of fact could conclude that she had already been granted a promotion by reason of the addition of executive compensation duties to her other responsibilities and all that was left to be done was the "paperwork" for a salary raise corresponding to her position. It is undisputed that the jobs plaintiff was offered following expiration of her leave involved lesser functions and fewer employees subject to her supervision. In the context of the paltry record, it is at least arguable that plaintiff was not offered an "equivalent position," as required by N.J.S.A. 34:11B-7. Stated another way, defendant did not satisfy its burden of "exclud[ing] any reasonable doubt" as to the legal efficacy of plaintiff's claim. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954).
Our Supreme Court has cautioned trial judges against granting summary judgment motions on a sketchy record where the ruling sought would have a far-reaching social and legal effect. See Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142, 249 A.2d 65 (1969); see also Pressler, Current N.J. Rules, Comment R. 4:46 (1993). That principle is applicable here, *12 because the issue presented "is a very important one involving highly significant policy considerations." Jackson v. Muhlenberg Hospital, 53 N.J. at 142, 249 A.2d 65. Beyond this, the legal issues were not ripe for resolution since discovery had not been completed. See Salomon v. Eli Lilly and Co., 98 N.J. 58, 61, 484 A.2d 320 (1984). It is inappropriate to grant summary judgment where the suit is in an early stage and the evidence has not been fully developed. Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193, 536 A.2d 237 (1988). In short, the interests of justice militate in favor of affording plaintiff the opportunity for full exposure of her case.
The summary judgment order is reversed and the matter is remanded to the Law Division.