IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 95-30050

JUNE MANUEL,

Plaintiff-Appellant,

versus

WESTLAKE POLYMERS CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

(October 3, 1995)

Before KING, HIGGINBOTHAM, and PARKER, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

June Manual appeals a summary judgment in favor of Westlake Polymers Corporation. The district court held that Manuel did not satisfy the notice requirements of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., because she did not expressly invoke the statute's protection when she notified her employer of her need for leave. We reverse and remand.

I.

June Manuel began working for Westlake Polymers Corporation in July 1986. Manuel missed a substantial number of days of work each year. In 1987, for example, she was absent seventeen days. As a result, Westlake's supervisors advised Manuel that her employment would be in jeopardy if her attendance did not improve. Despite

the warning, she missed forty-nine days in 1988 and thirty days in 1990. In June, 1991, Bryan Taylor, Westlake's Human Resources Coordinator, informed Manuel that her attendance record was unacceptable.

In 1992 Westlake established a "no fault" employment policy designed to ensure that its employees met reasonable attendance standards. Under the terms of the policy, every absence was counted regardless of the cause of the absence. The policy established a four-step system of progressive warnings and disciplinary measures calculated to apprise employees of attendance problems. Step one was an oral reprimand; step two was a written warning; step three was a one-week suspension and final warning; and step four was termination.

Manuel was warned in February, July, and September of 1992, the last of which informed her that "failure to immediately correct this problem will result in more severe disciplinary action, up to and including termination." Manuel continued to miss days of work. On December 30, 1992, Westlake sent Manuel a formal warning letter notifying her that, since the last warning three months earlier, she had missed approximately 14 days of work. This letter again advised her that her continued absenteeism could result in suspension or termination.

On October 6, 1993, two months after the FMLA went into effect, Manuel visited Dr. Frank Robbins seeking treatment for an ingrown toenail. Dr. Robbins advised her that her toenail needed to be removed and that, if the procedure were performed on a

2

Friday, she could return to work the following Monday. Manuel notified her supervisor, Sheldon Cooley, who immediately gave her permission to take Friday, October 8th off from work.

Dr. Robbins performed the procedure that Friday, but complications developed. Due to infection and swelling of her toe, Manuel was unable to walk without crutches. On the following Monday, Manuel contacted Cooley and notified him that she could not return to work due to her toe. Keeping in constant contact with Westlake, she remained absent from work for over a month. During this time, Manuel did not mention the FMLA, nor did she expressly invoke its protection. In fact, Manuel did not know the Act existed.

On November 29, 1993 at the request of Westlake, Manuel saw Dr. White, the Westlake company physician. After examining Manuel, Dr. White pronounced her able to return to work and advised her to report for work. The following day she returned to work, but Westlake promptly suspended her for four days and issued its "Final Warning/Suspension Letter for Unsatisfactory Attendance." The letter stated that "unless you are able to and actually do report for work regularly and as scheduled, your employment will be terminated."

Less than two months later, on January 25, 1994, Manuel became ill while at work and went home. She returned to work after three days, but this absence was one too many. On February 7, Westlake fired her because of her persistent attendance problem.

3

On April 14, 1994, Manuel sued Westlake in the United States District Court for the Western District of Louisiana, alleging that Westlake violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., by counting her October-November, 1993 absence as an additional step in its "no fault" policy. After conducting limited discovery, both Manuel and Westlake moved for summary judgment.

The district court granted Westlake's motion for summary judgment. The court found that Manuel notified her supervisor of the need to miss work for medical reasons but did not expressly invoke the FMLA or its protection when requesting leave. Examining the Department of Labor's interim regulations, the court noted that the regulations specified different notice requirements depending upon the foreseeability of the need for leave. Although in the case of foreseeable leave the employee "need not express certain rights under the FMLA or even mention the FMLA," 29 C.F.R. § 825.302(b), the regulation governing unforeseeable leave omitted this language and required an employee to give notice to her employer "of the need for the FMLA leave." 29 C.F.R. § 825.303(a).

Noting that Manuel's extended absence in October-November, 1993 was unforeseeable, the district court determined that her ingrown toenail was not such "an obviously serious injury, such as a broken leg, cancer, or heart attack, which would trigger an employer inquiry into whether the employee intended to use FMLA leave." The court concluded that when the need for leave is unforeseeable "and when the serious medical condition alleged is

4

not the type which would normally require an employer to inquire whether FMLA leave is needed, it is not inconvenient nor unduly burdensome to require an employee in some manner to refer, or attempt to refer, to the Act." Because Manuel did not make such an attempt, the court held that Manuel's notice to Westlake was insufficient to trigger the protection of the FMLA and granted Westlake's motion for summary judgment.

## II.

The FMLA provides eligible employees such as June Manuel twelve weeks of unpaid leave each year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Where that leave is <u>foreseeable</u>, the Act requires that the employee:

> (B) shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

29 U.S.C. § 2612(e)(2)(B). Significantly, the Act does not specify the form of notice required for foreseeable leave, nor does it mention any notice requirement for <u>unforeseeable</u> leave.

Similarly, the legislative history of the FMLA does not mention the content of the notice that an employee must give. The Senate Report accompanying the Act explains that 30-day advance notice is required for foreseeable leave but that "[e]mployees who face emergency medical conditions or unforeseen changes will not be

5

precluded from taking leave if they are unable to give 30 days' advance notice."  S. Rep. No. 3, 103rd Cong., 1st Sess. 25 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 27.  The House Report is more vague, stating only that "30-day advance notice is not required in cases of medical emergency or other unforeseen events."  H.R. Rep. No. 8, 103rd Cong., 1st Sess., pt. 1, at 38 (1993).  However, neither report mentions whether an employee must expressly invoke the FMLA when taking leave.

More helpfully, the Secretary of Labor, pursuant to his statutory authority,[1] promulgated interim regulations specifying what notice an employee must give.  29 C.F.R. §§ 825.302, 825.303.[2] The interim regulations provide that, when the need for leave is foreseeable, the employee must give "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."  29 C.F.R. § 825.302(c).  Significantly, the regulation continues, providing that an employee "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example."  Id.

When the need for leave is unforeseeable, however, the interim regulations contain no disclaimer of notice expressly invoking the

---

[1]    29 U.S.C. § 2654.

[2]    The Secretary released final regulations effective April 6, 1995.  See 60 Fed. Reg. 2181 (Jan. 6, 1995).  However, the interim regulations govern this dispute since Westlake's decision to suspend Manuel in December 1993 occurred prior to the release of the final regulations.

FMLA's protection. The regulation requires that an employee "should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Westlake interprets this difference in regulatory language as denoting that, when the need for leave is unforeseeable, an employee must mention the FMLA in order to provide sufficient notice to the employer. We disagree.

First, the regulation governing notice for unforeseeable leave does not, on its face, require express invocation of the FMLA. Rather, the regulation requires "notice of the need for FMLA leave." The reference to "FMLA leave" is ambiguous at best; it does not compel the conclusion that an employee seeking "FMLA leave" must mention the statute by name. The district court itself doubted that the phrase "FMLA leave" denotes a substantive requirement that an employee mention the FMLA when requesting leave.

Second, the absence of the disclaimer does not impose a requirement that the leave be expressly invoked by employees who could not foresee their need for leave. To the contrary, other provisions in the interim regulations suggest that the Secretary did not intend employees, including those who could not foresee their need for FMLA leave, to expressly invoke the FMLA to satisfy their notice obligation. § 825.208(a)(1) iterates:

> As noted in section 825.302(c), an employee giving notice of the need for unpaid FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet their [sic] obligation to provide notice,

7

though they would need to state a qualifying reason for the needed leave.

Moreover, this regulation provides that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, based on information provided by the employee." 29 C.F.R. § 825.208(a)(2). If the employer does not have sufficient information about the employee's reason for taking leave, "the employer should inquire further to ascertain whether the paid leave is potentially FMLA-qualifying." Id. To require the employee to designate her leave as pursuant to the FMLA would render these provisions meaningless, if not directly contradict them.

Any doubt as to the Secretary's intention is resolved by the final regulations, which confirm that an employee seeking leave for unforeseen medical treatment need not expressly invoke the Act's protection. Resolving the ambiguity lying at the heart of this case, the final regulation governing notice requirements for unforeseeable leave incorporates the disclaimer of express notice. 29 C.F.R. § 825.303(b) now provides that "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 60 Fed. Reg. 2181, 2258 (1995).

Westlake argues that this change in regulatory language confirmed that the interim regulation did require express mention of the FMLA. We disagree. The Department of Labor's explanation of the amendments to the interim regulations does not even discuss its addition. See 60 Fed. Reg. 2221. This treatment suggests that

8

the Department of Labor was attempting to clarify the law as it existed under the interim regulation, not to remove a pre-existing duty to mention the FMLA when requesting leave.

Westlake's argument ultimately rests on a perceived regulatory error. It offers no practical reason for its proposed reading. Westlake does not explain why the Secretary would impose such a stringent requirement upon employees who cannot foresee their need for leave but not upon employees who can foresee their need for leave. Congress added the notice requirement to assist employers plan around their employees' absences. See S. Rep. No. 3 at 2, reprinted in 1993 U.S.C.C.A.N. 3, 4; 137 Cong. Rec. H9727 (statement of Rep. Roukema) (noting that employee must give notice "so as not to unduly disrupt the operations of the employer"). That goal is not advanced by requiring employees to expressly mention the FMLA by name: an absent employee is an absent employee.

Westlake argues that requiring express mention of the FMLA furthers the employers' ability to invoke their rights under the Act. We disagree. The FMLA grants no rights to employers that they did not possess prior to the Act. Nor do we believe that Congress added the notice provision to apprise employers of their right to pursue their statutory safeguards.

Meanwhile, requiring employees unable to foresee their need for leave to expressly invoke the FMLA's protection would significantly burden the employees. Employees often cannot foresee their need for medical or family leave. S. Rep. No. 3 at 25,

9

reprinted in 1993 U.S.C.C.A.N. at 27.  Even more than employees who can foresee their need for leave, those who cannot foresee such need are ill-equipped to identify the statutory source of their right.  We do not believe that Congress, in enacting the FMLA, intended to impose such an onerous requirement on employees, particularly where employers receive no benefit from it.

We are persuaded that the interim regulations do not require employees to expressly mention the FMLA when notifying their employer of their need for FMLA leave.

B.

Westlake argues that if the regulations permit employees to invoke the FMLA's protection without expressly mentioning the Act, they are contrary to the FMLA.  We disagree.  Where a statute is silent or ambiguous, we limit our inquiry to "whether the agency's answer is based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Administrative regulations promulgated in response to express delegations of authority, like the one at issue here, "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  Id. at 844, 104 S.Ct. at 2782; see also 1A Sutherland Stat. Const. § 31.06 (5th ed.) (noting "regulations are generally entitled to great deference").

Neither the statutory language nor the Act's legislative history disclose congressional will regarding the content of the required notice.  We are unable to say that the regulations

10

challenged here are so patently at odds with the legislative scheme as to render them invalid. To the contrary, their disclaimer of any requirement that notice must expressly invoke the FMLA is a reasonable interpretation of the statutory scheme created by Congress.

Westlake points to the "express mandate" of the statute requiring notice of the employee's intention "to take leave under such subparagraph." 29 U.S.C. § 2612(e)(2)(B). We reject the contention that the FMLA requires employees not only to invoke the statute's protection by name, but to refer to the specific subparagraph of the FMLA under which they claim protection. These are workers, not lawyers. Accord D'Alia v. Allied-Signal Corp. 614 A.2d 1355, 1359 (N.J. Sup. Ct. App. Div. 1992) (holding that "rights and benefits granted by [analogous state law] should not depend on the sophistication of the employee").

Congress enacted the FMLA in order "to entitle employees to take reasonable leave for medical purposes." 29 U.S.C. § 2601(b)(2) (emphasis added). Its legislative history discloses that it "is based on the same principle as the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment." S. Rep. No. 3 at 4, reprinted in 1993 U.S.C.C.A.N. 3, 6-7. Significantly, none of these other federal labor laws granting benefits to employees requires those employees to refer to the specific statute, much less the specific statutory subsection, in order to avail

11

themselves of its benefits.  We do not believe Congress intended to depart from this practice and require employees to consult attorneys before notifying their employer of their need for FMLA leave.

Furthermore, contrary to Westlake's suggestion, permitting employees to avail themselves of the FMLA's protection without expressly invoking the statute does not leave employers such as Westlake without protection from abuse of the Act's generous provisions, nor does it require employers to engage in intrusive inquiries to determine whether the FMLA applies.  The Act permits employers notified of an employee's intent to take leave due to a serious health condition to require the employee to provide certification from a physician.  See 29 U.S.C. § 2613(a).  If the employer has reason to doubt the validity of the certification, it may ask for a second opinion from a different physician.  29 U.S.C. § 2613(c).  If the second opinion differs from the first, the employer may require a third opinion.  29 U.S.C. § 2613(d).  Moreover, the employer may require recertification on a reasonable, on-going basis.  29 U.S.C. § 2613(e).  In short, the FMLA provides safeguards from delinquent employees, but express notice by an employee that she takes leave pursuant to the FMLA is not one of those safeguards.

We hold that the Family and Medical Leave Act of 1993 does not require an employee to invoke the language of the statute to gain its protection when notifying her employer of her need for leave for a serious health condition.

12

C.

We decline to announce any categorical rules for the content of the notice by an employee. When an employee cannot give 30-days advance notice of the need for FMLA leave, the FMLA requires notice "as is practicable." 29 U.S.C. § 2612(e)(2)(B). What is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case. The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition. Accord D'Alia, 614 A.2d at 1359.

III.

Congress, in enacting the FMLA, did not intend employees like June Manuel to become conversant with the legal intricacies of the Act. The district court erred by requiring such knowledge. We leave to the district court the question of whether Manuel gave Westlake sufficient notice under the FMLA.[3]

REVERSED and REMANDED.

---

[3] We express no opinion regarding whether the complications arising from Manuel's surgery for her ingrown toenail constitute a "serious health condition."