Maryline **AVILA**, Plaintiff,

v.

Pam **CHILDERS**, in her official capacity As Escambia County Clerk of Court, Defendant.

**CASE NO. 3:15-cv-136/MCR/EMT**

United States District Court, N.D. Florida, **Pensacola Division.**

Signed 09/30/2016

Marie A. Mattox, William Gautier Kitchen, Marie A. Mattox PA, Tallahassee, FL, for Plaintiff.

Hetal Desai McGuire, Robert Jacob Sniffen, Sniffen & Spellman PA, Tallahassee, FL, for Defendant.

## ORDER

M. CASEY RODGERS, CHIEF
UNITED STATES DISTRICT JUDGE

Plaintiff Maryline Avila ("Avila") filed this suit against her former employer, Pam Childers ("Childers") in her official capacity as Escambia County Clerk of Court, for employment discrimination under the federal Civil Rights Act (Title VII) 42 U.S.C. § 2000(e), *et seq.*, the Florida Civil Rights Act, ("FCRA") and the Rehabilitation Act, 42 U.S.C. § 1981(a).[1] Avila also alleges re-

---

1. Counts I and II allege disability discrimination pursuant to Fla. Stat. Chapter 760, the Florida Civil Rights Act, and the Rehabilitation Act (29 U.S.C. § 794). However, in her Response to the Motion for Summary Judgment, Avila represents that she is no longer pursing claims of disability discrimination. Accordingly, Defendant's motion will be

taliation and interference with her rights under the Family and Medical Leave Act, ("FMLA") 29 U.S.C. § 2612.[2] Pending before the court is Defendant's Motion for Summary Judgment, ECF No. 51. *See* Fed. R. Civ. P. 56. Also pending is Defendant's Motion to Strike portions of Avila's affidavit, ECF No. 59. Having fully considered the record and the parties' arguments, the court finds that Defendant's Motion for Summary Judgment is due to be granted, and the Motion to Strike will be denied.

**Background** [3]

Avila, a Filipino woman, received accounting degrees in both the Philippines and Canada and a Master's Degree in Business Administration from the University of Phoenix in Reno, Nevada. In May 2008, she was hired by the Escambia County Clerk of Court as an Accounting Specialist II. In 2009, Avila was promoted to the position of Tax Deed Specialist by the Clerk of Court. Brenda Robinson, who is Caucasian, was Avila's immediate superior. Avila's job responsibilities as a Tax Deed Specialist included auctioning off properties for the County, notifying owners of the sales, and entering data received from the Tax Collector's Office into the computer system. Avila also assisted with duties in other departments when necessary, including processing passport applications. In 2010, Avila received a formal reprimand for using her work computer to access social media websites. She was issued additional reprimands in 2010 and 2011 for failing to key receipts into the computer system and for making multiple errors on tax certificates.

Avila testified that prior to Robinson's departure from the Clerk's Office in 2012, Robinson subjected her to disparate treatment based on her national origin. More specifically, Avila testified that Robinson yelled directives at her in the presence of coworkers and customers, something she did not do with non-Filipino employees. Avila, however, does not point to any specific comments by Robinson that would indicate disparate treatment based on her national origin. Avila also testified that Robinson subjected her work to heightened scrutiny and disciplined her for errors and policy violations for which no other employee was disciplined. Avila alleges that in 2012, she complained to Lisa Bernau, Chief Deputy Clerk, that she felt she was being singled out by Robinson because she was Filipino.

The undisputed facts reflect that Avila applied for three positions within the Clerk's Office while working as the Tax Deed Specialist. First, when Robinson resigned from her position as Executive Director in 2012, Avila applied for her position. Heather Mahoney, a white female Operations Supervisor with no disciplinary record, was given the job instead. Avila then applied for Mahoney's position. Nick Kelly, a white male who worked as Avila's assistant, was promoted to Mahoney's position. In September 2012, Kelly resigned from his position as Operations Supervisor, and Avila applied for the position again. This was the last position Avila applied for in the Clerk's Office and it was filled by Mylinda Johnson, a Caucasian employee, with no disciplinary history, on September 27, 2012. Notably, when asked in her depo-

---

granted on these claims. *See* Fed. R. Civ. P. 56(e)(3).

**2.** Plaintiff also cites to 29 U.S.C. § 2624, which does not exist.

**3.** For the limited purposes of this summary judgment proceeding, the court views "the

evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Martin v. Brevard Cty. Pub. Sch.,* 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted).

sition if there was "anything else that you feel was discriminatory besides the failure of you to get those positions that we discussed and then the mistreatment by Ms. Robinson," Avila responded "[n]o." (ECF No. 50-4. Page 68).

By the time Defendant Pam Childers took office as Escambia County Clerk of Court in January 2013, Avila had accumulated a long disciplinary history from both during and after Robinson's time at the Clerk's Office. For instance, she had received written reprimands and formal counseling for failing to follow mail and notarization procedures, leaving work for co-workers to complete, and not turning in her work on time. A few weeks after Childers took office, Avila met with Susan Woolf, General Counsel, to tell her about Robinson's discriminatory conduct and to request a transfer. Avila wanted to transfer from the department because Mahoney, who was serving as her supervisor at the time, was friends with Robinson. Avila testified, however, that she never complained about Mahoney. The transfer request was denied. In May 2013, Avila was formally suspended for five days for poor customer service. Along with the suspension, Avila was warned that subsequent violations could result in additional discipline, including termination.

In July 2013, Avila took bereavement and personal leave from July 3, 2013 until July 29, 2013 to attend her mother's funeral in the Philippines. During her absence, the Clerk's Office discovered numerous errors that Avila made in tax deed files.[4] Avila testified that after the funeral she suffered from severe depression, preventing her from returning to work. Sometime at the end of July 2013, around the time she was supposed to return to work, Avila's daughter called to tell the Clerk's Office her mother was sick and that she would not be at work and a doctor's note would be faxed. Avila testified that her doctor faxed an excusal to the Clerk's Office that read "Please excuse pt. from work from 7-29-13 thru Aug. 2, 2013. May return to work Aug. 5, 2013." (ECF No. 50-18).[5] The Clerk's Office, however, was never told that Avila was suffering from depression.[6] On August 2, 2013, Childers issued a termination letter to Avila, which Childers states was issued because of the numerous errors found while Avila was out of the office.

Several months after her termination, Avila filed a charge with the Equal Employment Opportunity Commission, ("EEOC") alleging national origin discrimination. Although the parties disagree on the particular date, they agree the charge was filed sometime in late January 2014.[7] The EEOC then transferred the complaint to the Florida Commission of Human Relations, ("FCHR") which issued a "no cause" determination. On April 9, 2015, Avila filed this complaint. Childers then filed a Motion for Summary Judgment on all claims.

4. Although Avila disputes that she made these errors. The dispute, however, is not material to the court's ruling.

5. The parties dispute what information was received from Avila's doctor. The Clerk's Office claims they only received a lab report, while Avila testified the doctor's note was faxed, as stated above. Because neither a lab report nor the doctor's note provided to the Clerk's Office was sufficient notice under the FMLA, this dispute does not preclude summary judgment.

6. Avila testified that the Clerk's Office knew she was sick, but she has not presented any evidence to support her claims that the Clerk's Office knew she was suffering from depression, specifically.

7. Avila stated the charge was filed on January 24, 2014, and Childers stated the charge was filed on January 27, 2014. The court must view the evidence in the light most favorable to Plaintiff, so the analysis below will presume she filed on January 24, 2014.

## Discussion

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a); *see also Martin*, 543 F.3d at 1265. Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts[ ] and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc). The court will not make credibility determinations or weigh the evidence presented on summary judgment. *Frederick v. Sprint/United Mgm't Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). Whenever sufficient, competent evidence is present to support the plaintiff's version of the disputed facts, the court will resolve disputes in the plaintiff's favor. *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002).

*Count III: National Origin Discrimination*

■ Count III involves a claim of national origin discrimination, pursuant Title VII and the FCRA. *See* 42 U.S.C. § 2000(e), *et. seq.*; Fla. Stat. § 760. Initially the court finds that Avila's Title VII national origin discrimination claim is time-barred.[8] Because Avila filed her EEOC charge on January 24, 2014, any discriminatory act she complained of must have occurred within 300 days, or on or after March 30, 2013 to be timely. *See Brooks v. CSX Transp., Inc.*, 555 Fed. Appx. 878, 880 (11th Cir. 2014)[9] (finding that for a charge to be timely in a deferral state like Florida, it must be filed within 300 days of the last discriminatory act); *see also E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1270 (11th Cir. 2002). Although Avila claims discrimination was ongoing until the time of her termination, nothing in the record supports that claim. As Avila's testimony reveals, she only felt discriminated against by Robinson, who left the Clerk's Office in July 2012. The only other action Avila claims was discriminatory is the failure of the Clerk's Office to appoint her to the positions for which she applied. The last position Avila applied for was filled on September 27, 2012. Thus, her claim for discrimination under Title VII is untimely.

■ Discrimination claims under the FRCA must be filed within 365 days of the alleged unlawful employment practice. *Fla. Stat.* § 760.11 (2015); *see also Ganpath v. Advance Stores Co.*, No. 10–60036–CIV, 2011 WL 6069336, at *6 (S.D. Fla. Dec. 6, 2011). Any discriminatory act under the FRCA must have occurred on or after January 24, 2013. Thus, the claims for discrimination based on the FRCA are also untimely.[10]

---

8. Childers also claims that Avila did not properly request an administrative hearing, pursuant to Fla. Stat. § 760.11. The court finds it unnecessary to reach that issue because Avila did not timely file her complaint with the EEOC.

9. While unpublished opinions are not considered binding, they may be considered persuasive. *See* 11th Cir. R. 36–2; *see also United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000).

10. Both Childers and Avila thoroughly briefed the Count III claim on the merits, but the court sees no reason to discuss the merits here, given its timeliness ruling.

*Count IV: Retaliation under Title VII and the FRCA*

 Avila claims in Count IV of the Amended Complaint that Childers retaliated against her after she reported Brenda Robinson's discriminatory conduct to Lisa Bernau, in violation of Title VII and the FRCA.[11] An employer may not discriminate against an employee for opposing "any practice made an unlawful employment practice... or because [the employee] made a charge, testified, assisted, or participated in any manner in an investigation or proceeding" by the EEOC. 42 U.S.C. § 2000e–3. For a *prima facie* case of retaliation, Avila must show (1) she engaged in a statutorily protected activity, (2) she suffered an adverse action, and (3) a causal relation exists between her protected activity and the adverse action. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Also, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Booth v. Pasco County, Fla.*, 757 F.3d 1198, 1207 (11th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013)). Complaining about discrimination on the basis of national origin to a superior is considered a protected activity. *Brown v. City of Opelika*, 211 Fed.Appx. 862, 864 (11th Cir. 2006). And, of course, termination is an adverse employment action. *Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985). Thus, Avila satisfies the first two requirements; however, the court finds there was no causal connection between the protected activity and Avila's termination.

 To establish the requisite causal connection, Avila must show that Childers was "aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted)). At the *prima facie* stage, causation sufficient to raise an inference of retaliation can be shown through temporal proximity between the statutorily protected activity and the adverse action. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). To show causation through temporal proximity, however, the time between the protected activity and the adverse action must be, without more, "very close." *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). The Eleventh Circuit held in one decision that "[e]ven a three-month interval between the protected expression and the employment action ... [was] too long" *Alabama Dep't of Transp.*, 597 F.3d at 1182 (citing *Thomas*, 506 F.3d at 1364). When there is no other evidence to demonstrate causation, "if there is substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Hooper v. Total Sys. Servs., Inc.*, 799 F.Supp.2d 1350, 1374 (M.D. Ga. 2011)

---

11. Because these statutes have the same standards of proof and use the same analytical framework, the analysis for the Title VII claims applies to the FCRA claims as well. *See e.g., Bryant v. Jones*, 575 F.3d 1281, 1296, n.20 (11th Cir. 2009) (discrimination claims, including hostile work environment claims, under Title VII and § 1981 are subject to the same standards of proof and analyzed under the same framework); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (retaliation claims); *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (noting that "the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework").

(quoting *Clark Cty. Sch. Dist.*, 532 U.S. at 273, 121 S.Ct. 1508).

■■■ Avila complained about national origin discrimination to Bernau sometime in 2012 and to Woolf January 2013, but she was not terminated until August 2, 2013.[12] There were approximately eight months between the time when Avila met with Woolf in January 2013 and when she was terminated—a time period that far exceeds what the law recognizes as necessary to establish a causal connection by temporal proximity. *See e.g., Walker v. Sec'y, U.S. Dep't of Air Force*, 518 Fed.Appx. 626, 628 (11th Cir. 2013) (holding a three month interval between the plaintiff's protected activity and adverse employment action was insufficient to establish a *prima facie* case); *Gomez v. Valley Hosp. Servs., LLC*, No. 4:11–CV–183 CDL, 2013 WL 3964807, at *4 (M.D. Ga. July 31, 2013) (finding that the timing between the protected activity and the adverse employment action was greater than three months, and therefore too great to infer a causal link); *Witt v. Franklin Cty. Bd. of Educ.*, No. CV–11–S–1031–NW, 2013 WL 832152, at *25 (N.D. Ala. Feb. 28, 2013) (holding that a five to twelve month interval exceeded that which can legally establish a causal connection).

Despite the significant lapse in time, Avila argues the court is not precluded from finding causation because the Clerk's Office took the first opportunity it had to terminate Avila's employment—when she was sick. This argument is without merit. The case law that Avila points to in an effort to avoid the close temporal proximity obligation is distinguishable from the facts of this case. In those cases, the courts indicated that the employers took the "first opportunity" they had to retaliate after learning of the protected conduct. *See e.g., Ford v. GMC*, 305 F.3d 545, 554–

55 (6th Cir.2002) (finding causal connection even with a five-month gap between protected activity and adverse action because plaintiff was under the control of a different supervisor during the gap); *Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005) (finding there was a delay between the protected activity and the adverse action because fellow employee could not retaliate until after he was promoted to a supervisory position); *Dale v. Wynne*, 497 F.Supp.2d 1337, 1345-46 (M.D. Ala. 2007) (finding that an extended time gap did not defeat the causal connection because the plaintiff was not subject to adverse treatment until she returned to work after a leave of absence). Here, by contrast, there were several months between Avila's complaints and her termination. Mahoney was Avila's superior and could have fired her at any time. Indeed, Avila fails to establish any reason why Childers could not have terminated her at an earlier time. Therefore, Childers' Motion for Summary Judgment is due to be granted on Avila's Title VII and FRCA retaliation claims.

*Count V: FMLA Interference and Retaliation*

Count V alleges interference and retaliation, in violation of the Family and Medical Leave Act. The FMLA "grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons, including because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014) (internal marks omitted). If an employer interferes with, restrains, or denies the exercise, or attempted exercise, of FMLA rights, the

---

12. The record is not clear as to exactly when Avila met with Bernau, but it is undisputed that it was prior to her meeting with Woolf.

employee may bring a private civil action for damages or equitable relief. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (citing 29 U.S.C. §§ 2615(a)(1) & 2617(a)). The Eleventh Circuit has explained that § 2615(a) includes two types of FMLA claims: (1) "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act," and (2) "retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Id.* (internal marks omitted).

An interference claim requires "proof by a preponderance of the evidence that [the employee] was entitled to the benefit denied." *Id.* (internal marks omitted); *see also Jarvela v. Crete Carrier Corp.*, 754 F.3d 1283, 1289 (11th Cir. 2014). "[T]he employer's motives are irrelevant" to an interference claim. *Martin*, 543 F.3d at 1267 (internal marks omitted). Before taking leave, an employee requesting FMLA leave is required to give notice to the employer. If the reason for the leave is unforeseen, notice must be given as soon as is practicable. 29 C.F.R. § 825.302(a). Employees are authorized by the FMLA to use a "spokesperson" to give notice, and the notice is valid if it is "sufficient to make the employer aware that the employee needs FMLA qualifying leave" and gives the employer "the anticipated time and duration of the leave." 29 C.F.R § 825.303(a); § 825.302(c). An employee is not required to "expressly assert rights under the FMLA or even mention the FMLA." *Id.* However, the employee must provide the employer with notice sufficient to "make the employer aware that [the] absence is due to a potentially FMLA-qualifying reason." *Gay v. Gilman Paper*

*Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997). Without sufficient notice, the employer is under no obligation to comply with the requirements of the FMLA. *See Andrews v. CSX Transp., Inc.*, 737 F.Supp.2d 1342, 1351 (M.D. Fla. 2010). The regulations provide that calling in "sick" without providing more information is not sufficient notice to trigger an employer's FMLA obligations. 29 C.F.R. § 825.303.

The Eleventh Circuit has held that summary judgment is appropriate when a plaintiff does not notify the defendant of any condition that could potentially qualify for FMLA leave. *Cruz v. Publix Super Markets Inc.*, 428 F.3d 1379, 1384 (11th Cir. 2005). In *Cruz*, the plaintiff "provided no information to Publix managers to make them aware of her daughter's alleged serious health condition."[13] The *Cruz* court stated that the plaintiff "withheld critical information regarding the reason for her request" and granted summary judgment. *Id.* Other courts in this circuit have found that simply referencing being sick, and providing a vague doctor's note is not sufficient notice to an employer that leave may be potentially FMLA qualifying. *Andrews*, 737 F.Supp.2d at 1351; *Lowery v. Strength*, 356 Fed.Appx. 332, 334 (11th Cir. 2009); *Hoopingarner v. Corinthian Colleges, Inc.*, No. 8:11–CV–397–T–30TGW, 2012 WL 1551274, at *5 (M.D. Fla. Apr. 30, 2012).

Avila was employed full-time by the Clerk's Office for over five years, making her eligible for FMLA leave. Avila also suffered from severe depression. Depression is recognized as a *potentially* serious health condition under the FMLA, and a reasonable jury could find that Avila's depression qualifies. *See, e.g., Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083,

---

**13.** The FMLA allows an employee to take FMLA leave to care for a spouse, son, daughter, or parent suffering from a serious illness. 29 U.S.C. § 2612(a)(1)(C).

1090 (8th Cir. 2001) (emphasis added); *Norman v. S. Guar. Ins. Co.*, 191 F.Supp.2d 1321, 1329 (M.D. Ala. 2002). As a result, the analysis below will assume Avila suffered from a "serious health condition" and that she was eligible for leave under the FMLA.

Regarding the notice requirement, Avila testified that she had her daughter call the Clerk's Office to notify Avila's supervisor that her mother would not be at work and that a doctor's note would be forthcoming. However, Avila does not present any evidence that she or her daughter informed anyone at the Clerk's Office that Avila was suffering from depression. Avila testified that a note was sent to the Clerk's Office by her doctor. However, the note did not reference any ailment, much less specifically indicate that Avila was suffering from depression. Like in the *Andrews* case, the Clerk's Office in this case was only given a vague doctor's note with references to Avila being sick and needing time off work. *Andrews*, 737 F.Supp.2d at 1351. This is insufficient notice under the FMLA.

Avila also argues that summary judgment is not appropriate because Childers did not inquire of Avila or her doctor about Avila's condition. However, an employer's responsibility for further inquiry arises only after the employee provides a reason to believe the employee is entitled to FMLA leave. 29 C.F.R. § 825.303; *Cruz*, 428 F.3d at 1385. The FMLA does not require "employers to engage in intrusive inquiries to determine whether the FMLA applies." *Andrews*, 737 F.Supp.2d at 1351 (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 763 (5th Cir. 1995)). "Requiring employers to determine whether leave is covered by the FMLA every time an employee was absent because of sickness would impose 'a substantial and largely wasted investigative burden on employers.'" *Andrews*, 737

F.Supp.2d at 1351 (quoting *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311 (7th Cir. 2006). Avila's doctor's note and Childers' knowledge that she was sick did not give Childers a reason to believe Avila was entitled to FMLA leave. Thus, Childers had no duty to make further inquiry into Avila's condition.

Avila also argues she was entitled to reinstatement following her sick leave. The FMLA provides employees with a right to reinstatement on return from FMLA leave. 29 U.S.C. § 2612(a)(1)(D). This right, however, is not absolute. *Martin*, 543 F.3d at 1267. An employer can deny reinstatement "if it can demonstrate that it would have discharged the employee had [she] not been on FMLA leave." *Id.* (quoting *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206–07 (11th Cir. 2001)). The Eleventh Circuit has held that "[i]f the evidence shows that a decision maker was unaware of an employee's request to take FMLA leave at the time of the decision to terminate the employee, the employer is entitled to summary judgment." *Rudy v. Walter Coke, Inc.*, 613 Fed.Appx. 828, 830 (11th Cir. 2015) (citing, *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010)). Here, at most, Childers would have known only that Avila was sick, which, as described above, was insufficient to put Childers on notice that Avila qualified for FMLA leave. Accordingly, Childers is entitled to summary judgment as to Avila's claim of FMLA interference.

Finally, Avila claims Childers retaliated against her for using her FMLA leave, but this claim fails for the same reason—Avila did not request FMLA leave, and Childers did not have sufficient notice that Avila was suffering from a serious health condition. A claim of retaliation under the FMLA is separate from an interference claim. *Strickland*, 239 F.3d at

1206. However, an employee who brings an FMLA retaliation claim faces a burden beyond that associated with an interference claim. *Id.* To succeed on a FMLA retaliation claim, Avila must establish that Childers "intentionally 'discriminated against [her] because [she] engaged in activity protected by the Act.'" *Foshee v. Ascension Health–IS, Inc.*, 384 Fed.Appx. 890, 891 (11th Cir.2010) (quoting *Strickland*, 239 F.3d at 1206). Without requesting FMLA leave or providing sufficient notice to Childers, Avila cannot prove she was engaged in a statutorily protected activity, and Childers is entitled to summary judgment on Avila's FMLA retaliation claim.

**Conclusion:**

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 51, is **GRANTED** and Defendant's Motion to Strike, ECF No. 59, is **DENIED** as moot. The Clerk of Court is directed to enter final summary judgment in favor of Defendant and against Plaintiff.

**DONE AND ORDERED on this 30th day of September, 2016.**