**Jimmye FREEMON, Plaintiff,**

**v.**

**Steve FOLEY, WIC Program Director, Gilda Ivy, WIC Western Site Assistant Coordinator, Juan Corbin, Acting Assistant Supervisor, Steven Hulsh, Vice President of Human Resources, and Mount Sinai Hospital Medical Center of Chicago, Defendants.**

**No. 95 C 209.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 8, 1995.

---

John P. De Rose, Kenneth A. Jatczak, John P. De Rose & Associates, Burr Ridge, IL, for Jimmye Freemon.

Joseph Michael Gagliardo, Jeffrey S. Fowler, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, for Steve Foley, Gilda Ivy, Juan Corbin, Mt. Sinai Hospital Medical Center.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Plaintiff Jimmye Freemon brings this complaint against Mount Sinai Hospital Medical Center of Chicago ("Mt. Sinai") and several of its employees, alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654.[1] Presently before this court is Defendants Steve Foley, Gilda Ivy, Juan Corbin, and Steve Huish's motion for summary judgment. For the reasons set forth below, the defendants' motion is granted in part and denied in part.

### I. Background

From December 13, 1988 to July 7, 1994, Freemon was employed as a nutritionist at Mt. Sinai in the Woman with Infants and Children ("WIC") program.[2] Her immediate supervisor during that time was Gilda Ivy, the Site Supervisor of the WIC program from 1991–94 and Assistant Program Manager of WIC since 1993. When Ivy was out of the office Juan Corbin, a medical assistant in the WIC program, would act as Freemon's temporary supervisor. In turn, Ivy (or Corbin) reported to the WIC Program Manager, Steve Foley, whose direct supervisor was the Vice President of Human Resources, Steven Hulsh. None of these individual defendants were officers or directors of Mt. Sinai, and all but Hulsh contend that they did not have an ownership interest in the company.

Although the parties do not elaborate on the relationship between Freemon and her supervisors, it is apparent from the record that Freemon had been disciplined in the past for poor performance and absenteeism, and was on probation during the relevant time period. On May 29, 1994, Freemon learned that her five-year old son Joseph had contracted chicken pox. The next work day, May 31, 1994, she contacted Ivy and informed her that she would not be in the office because of her son's illness. When she took Joseph to the doctor on June 2, Freemon also learned that her other son, three-year old Joshua, had a contagious fungal infection. Freemon contends that the doctor told her to keep both children at home until they recovered. Plaintiff then called Ivy and informed her of this situation and the need for her to remain at home with her children. Ivy told Freemon that her vacation time would cover her absence until June 13, 1994, and that she should return to Mt. Sinai at that time. Unfortunately, the plaintiff asserts that by the time Joshua recovered from the fungal infection, he had contracted chicken pox from his sibling. Freemon told both Ivy and Foley of these events, and informed Ivy on June 16 that she expected to be back at work on June 21 after another visit to Joshua's doctor.

Freemon returned to work on June 21, 1994, and provided a copy of her doctor's statement about Joseph and Joshua's condition to Corbin, who was filling in for Ivy. However, Ivy claims that the note provided to her by Freemon covered only June 2, 1994, and did not justify Freemon's absence

---

1. We previously entered judgment on the pleadings against Plaintiff on her equal protection claim. *Freemon v. Foley*, No. 95 C 209, 1995 WL 229045 (N.D. Ill. April 14, 1995).

2. Although the WIC program was previously operated under the auspices of Sinai Family and Community Center of Mt. Sinai, it now falls under the control of the Mt. Sinai Community Institute. The parties contend that this change in legal status has no impact on the instant litigation.

for the entire period of time. Ivy called Freemon's doctor to verify the need for her lengthy absence, but was denied specific information about the medical condition of Joseph and Joshua because Freemon had not signed a medical release form. On June 28, 1994, Ivy confronted Freemon about the problem with her documentation, but Plaintiff contended that she did not have any additional documentation in the office at that time. Ivy then went to Foley, complained to him about Freemon's poor performance and absenteeism, and recommended her termination. Foley relayed this information to Hulsh and the Director of the Sinai Family and Community Health Services, and was told by Hulsh to suspend Freemon pending an investigation of her absences in May and June. That same day Foley suspended Freemon, and told her to provide him with the proper documentation.[3] On June 30, 1994, Freemon gave Foley another copy of the doctor's note she provided to Ivy on June 21, but she refused to sign a medical release form. Foley maintains that he again spoke with Hulsh about Freemon, and that Hulsh directed him to tell Freemon to provide either medical records verifying the need for her May 31–June 21 absence, or a medical release form for her children, within one week. In addition, Freemon was told that if she did not comply with this request, she would be discharged. Freemon claims that she provided an original of the doctor's note to Foley, but that he told her Hulsh still wanted a release form.[4] On July 7, 1994, Foley contacted the plaintiff at home and told her she was discharged because of her failure to provide the necessary documentation of the need for her absence.

## II. Summary Judgment Standard

A motion for summary judgment will be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). Once the moving party has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings; rather, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995) (non-movant "must come forward with evidence of a genuine factual dispute"). Although we read the facts in a light most favorable to the non-moving party, *Cuddington v. Northern Ind. Public Serv. Corp.*, 33 F.3d 813, 815 (7th Cir.1994), in order to stave off summary judgment the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit, *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.1994).

## III. Discussion

Enacted on February 5, 1993, the FMLA is Congress's attempt to balance the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling family reasons. 29 U.S.C. § 2601(b). In addition to providing eligible employees with up to twelve weeks of unpaid leave to handle qualified family problems,[5] the FMLA also ensures that those

---

**3.** Foley asserts that he told Plaintiff to provide him with either the necessary medical records or a medical release form. Freemon contends that Foley and Ivy only presented her with the ultimatum of signing a release form by June 30.

**4.** Foley maintains that Freemon never produced either the requested medical records or a signed release form.

**5.** The FMLA provides, in pertinent part:

an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:

... (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

29 U.S.C. § 2612(a)(1).

who take such leave will be restored to their former position or an equivalent one upon returning to work.[6] Employers who violate the statute are liable to the injured employee for compensatory damages, back pay, and equitable relief. 29 U.S.C. § 2617(a). An employer is defined in the FMLA as:

> any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year ... includ[ing] ... *any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer....*

29 U.S.C. § 2611(4)(A)(i), (ii) (emphasis added).

The individual defendants argue that they cannot, as a matter of law, be held liable for any alleged violations of the FMLA because they were not Freemon's "employers." They did not employ fifty or more people during the previous twenty weeks, they were not officers or directors of Mt. Sinai, and they all disavow any "unilateral authority" to hire, discharge, or grant a leave of absence to an employee of Mt. Sinai. The plaintiff responds that although she received her paycheck from Mt. Sinai, the individual defendants exercised sufficient control over her employment conditions to fall within the FMLA's definition of "employer," and thus these individuals may be held personally liable for her illegal termination.

Although the issue of individual liability under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.,* and the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §§ 621 *et seq.,* has been frequently litigated in this district, *see Jendusa v. Cancer Treatment Centers of America, Inc.,* 868 F.Supp. 1006, 1008–09 (N.D.Ill.1994) (collect-

ing cases), and the Seventh Circuit Court of Appeals has recently held that individuals cannot be personally liable under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq., EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1279–82 (7th Cir.1995), the question of individual liability under the FMLA is one of first impression in this circuit.[7] The defendants argue that we should look to these other employment discrimination statutes for guidance in interpreting the FMLA. However, the definition of an "employer" under Title VII, the ADEA, and the ADA differs from that used in the FMLA. The former statutes define an employer as a person engaged in an industry affecting commerce who employs a certain number of people, "and any agent of such person." 42 U.S.C. § 12111(5)(A) (ADA), § 2000e(b) (Title VII); 29 U.S.C. § 630(b) (ADEA). In contrast, the FMLA extends employer status to "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(*l*). Rather than mirroring these discrimination statutes, the FMLA tracks word for word the definition used in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d); 60 Fed.Reg. 2239–40 (1995) (to be codified at 29 C.F.R. § 825.104(d)) (noting equivalence of FMLA's and FLSA's definition of employer). Thus, given the parallel between these two statutes, we look to the FLSA—rather than the aforementioned discrimination statutes— to enlighten our interpretation of the term "employer" under the FMLA. *See Reich v. Midwest Plastic Eng'g, Inc.,* No. 1:94–CV–525, 1995 WL 478884, at *5–6 (W.D.Mich. June 6, 1995) (looking to FLSA to interpret definition of employer in FMLA); *McKiernan v. Smith–Edwards–Dunlap Co.,* No. 95–1175, 1995 WL 311393, at *3 (E.D.Pa. May

---

**6.** The relevant portion of the FMLA reads:
   any *eligible employee who takes leave under* section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave:
   (A) *to be restored by the employer to the position of employment held by the employee when the leave commenced;* or
   (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1).

**7.** We use the term "individual liability" to mean the liability of individuals who do not otherwise meet the statutory definition of "employer" in 29 U.S.C. § 2611(4)(A)(i). In other words, "individual liability" does not refer to the liability of a sole proprietor who employs at least 50 people during the previous twenty weeks. *See AIC Sec. Investigations,* 55 F.3d at 1280 n. 2.

17, 1995) (same); *see also AIC Sec. Investigations,* 55 F.3d at 1280 n. 1 (noting that interpretation of ADEA sometimes differs from Title VII and ADA because portions of FLSA are incorporated into ADEA).[8]

■ Status as an employer under the FLSA is a question of law. *Karr v. Strong Detective Agency, Inc.,* 787 F.2d 1205, 1206 (7th Cir.1985). "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991) (citing *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973)). In dicta, this circuit has stated that an individual may be liable in an FLSA action "provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir.1987). Although corporate officers with "operational control" over an employing entity clearly fall within this definition, *see Elliott Travel,* 942 F.2d at 965, the FLSA has also been construed as extending to those "who, though lacking a possessory interest in the 'employer' corporation, effectively dominate[ ] its administration or otherwise act[ ], or ha[ve] the power to act, on behalf of the corporation vis-a-vis its employees." *Reich v. Circle C. Invs., Inc.,* 998 F.2d 324, 329 (5th Cir.1993) (quotations omitted). Thus, even if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual. *See Elliott Travel,* 942 F.2d at 966; *Dole v. Simpson,* 784 F.Supp. 538, 545 (S.D.Ind.1991); *see also Rubin v. Tourneau, Inc.,* 797 F.Supp. 247, 253 (S.D.N.Y.1992) (construing same definition of employer in 29 U.S.C. § 2001(2) to reach a person "if, as a matter of economic reality, that person or entity exerts some degree of control over the employer's compliance" with the statute).

■ In the instant case, Defendants Ivy and Foley recommended that Freemon be terminated because of her absence from May 31–June 21, and Defendant Hulsh directed Foley to suspend Freemon until she provided the requisite information. Freemon states in her affidavit that both Ivy and Foley told her that she could avoid termination only if she submitted a signed medical release form, regardless of the other certification information she had provided up to that point. When Freemon failed to provide the requested documentation by June 30, Foley again recommended her termination to Hulsh, who directed Foley to inform the plaintiff that she would be terminated if she did not provide adequate documentation of her absence. When Freemon failed to meet the one-week deadline, Foley called her at home and informed her that she was discharged. From these facts it is clear that although Hulsh, Foley, and Ivy were not directors or officers of Mt. Sinai, they nonetheless exercised sufficient control over Plaintiff's ability to take protected leave to qualify as employers under the FMLA. *See Circle C. Invs.,* 998 F.2d at 329 (holding consultant with no ownership interest in corporation and no control over day-to-day operations liable under FLSA because of control over wages); *McKiernan,* 1995 WL 311393, at *3 (supervisor who signed discharge letter considered employer under FMLA).

■ Defendants point to *Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799, 802–03 (E.D.Ark.1990), and *Schuth v. LSU Medical Center,* Civ. A. No. 87–4191, 1989 WL 65566, at *2 (E.D.La. June 15, 1989), to support their contention that they cannot be deemed employers under the FMLA. However, these cases are distinguishable. In *Dole* the individual defendant was the maitre d' of a restaurant alleged to have violated the FLSA, and he was not considered an employer because he did not hire or fire employees, set wages, control operations, or control payroll. 751 F.Supp. at 803. Likewise, the individual defendants in *Schuth* were not considered employers under the Equal Pay Act because they did not hire the plaintiffs or

---

**8.** Given that we find Title VII, the ADEA, and the ADA inapposite to our interpretation of the FMLA, we decline the defendants' invitation to consider the policies behind those statutes when deciding whether individuals may be liable under FMLA.

play any role in determining their pay. 1989 WL 65566, at *2. In contrast, Foley and Ivy recommended that Plaintiff be terminated because of her absenteeism, and Hulsh directed them to suspend (and later discharge) Freemon. Indeed, Foley was the person who informed Freemon that she no longer had a job at Mt. Sinai. Although all the defendants claim they did not have "unilateral" authority to approve or deny Freemon's leave, and that they were simply following Mt. Sinai's policies, the FMLA's reach is not limited solely to those who possess "unilateral" authority over the conditions of employment. *See Riordan,* 831 F.2d at 694; *Tourneau,* 797 F.Supp. at 253. Rather, because of the expansive interpretation given to the term "employer" in the FLSA, we believe the FMLA extends to all those who controlled "in whole or in part" Freemon's ability to take a leave of absence and return to her position. Accordingly, because Foley, Ivy, and Hulsh were capable of impeding or denying Freemon's ability to exercise her statutorily protected right to leave under the FMLA, we deny their motion for summary judgment.

■ However, we see no basis for imposing individual liability on defendant Juan Corbin. Although she was Plaintiff's acting supervisor on the day she returned to Mt. Sinai, there is no evidence that she played any role in her discharge. Rather, Corbin asserts that she delivered the documentation given to her by Freemon to Ivy's desk, and Plaintiff does not dispute this contention. Her only basis for holding Corbin liable stems from the requirement that she give the documentation to Corbin upon her return. However, because Freemon presents no evidence suggesting that Corbin failed to forward this information, or that Corbin played any role in recommending or effectuating Plaintiff's termination, we fail to see how this defendant can be held liable under the FMLA. Accordingly, we grant Defendant Corbin's motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, summary judgment is granted with respect to Defendant Corbin, and denied with respect to Defendants Foley, Ivy, and Hulsh. It is so ordered.