Martha A. BRYANT,

v.

DELBAR PRODUCTS, INC.
and Bill Caruthers.

No. 2:97–0100.

United States District Court,
M.D. Tennessee,
Northeast Division.

Aug. 27, 1998.

William Bush, Cookeville, TN, for Plaintiff.

W. Kerby Bowling, II, Charles W. Cavagnaro, Jr., Joseph M. Crout, Bowling, Bowling & Associates, Memphis, TN, for Defendants.

## MEMORANDUM

WISEMAN, Senior District Judge.

Before the Court are the plaintiff's motion for partial summary judgment; the defendant's motion for summary judgment or, in the alternative, partial summary judgment; the defendants' motion to deny the plaintiff's jury demand; motions to strike by both the plaintiff and the defendants; and the plaintiff's motion for oral argument. For the reasons set forth below, the Court hereby (1) GRANTS the plaintiff's motion for partial summary judgment and DENIES the defendants' motion for summary judgment, (2) DENIES the defendants' motion to deny the plaintiff's jury demand, (3) DENIES both the plaintiff's and the defendants' motions to strike, and (4) DENIES the plaintiff's motion for oral argument.

### I. Relevant Procedural Background

The plaintiff, Martha Bryant, filed suit under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.* She alleges that the defendants, Delbar Products and Bill Caruthers, violated the FMLA by terminating her for excessive absenteeism and by discriminating against her for opposing practices of the defendants that are made unlawful by the FMLA. Ms. Bryant requests a jury trial and is seeking damages, interest, liquidated damages, and other equitable relief found by the court to be appropriate. The defendants have filed a motion for summary judgment or, in the alternative, partial summary judgment. They deny any liability under the FMLA and claim that defendant Caruthers should be dismissed from the law-

suit because the FMLA does not provide for individual liability. Ms. Bryant has filed a motion for partial summary judgment on the issue of the defendants' liability under the FMLA. Furthermore, the defendants have moved to deny Ms. Bryant's jury demand and both parties have filed motions to strike. Ms. Bryant has requested oral argument on the motions pending before the court.

## II. Relevant Factual Background

Martha Bryant worked on the assembly line for Delbar Products, Inc. from December 12, 1983 until April 8, 1996, when she was discharged for excessive absenteeism. Delbar manufactures automotive rear view mirrors. *See Amended Complaint*, ¶ 3; *Answer to Amended Complaint*, ¶ 3. Defendant Bill Caruthers is the manufacturing manager for Delbar in Tennessee. *Dep. of Bill Caruthers*, p. 6. Delbar's absenteeism policy is based on an "occurrence" system. In general, employees are assessed one point for each day that they are absent from work for an unexcused reason. They are assessed one-half point if they arrive late or leave early but work at least four hours in a day. At the six occurrence level, an employee is placed on probation. When occurrences accumulate to eight within a one-year period, the employee is fired for excessive absenteeism. If the employee has fewer than six occurrences at the end of the calendar year, however, he or she can start the next year with a "clean slate" of zero occurrences. *See Defendant's Response to Plaintiff's Statement of Material Facts*, ¶ 7.

On March 26, 1995, Ms. Bryant's son, Howard Bryant, was hospitalized with advanced kidney failure.[1] *Aff. of Martha Bryant*, ¶ 6; *see Decl. of Lee Ray Crowe, M.D.*, ¶ 4. He remained in the hospital until March 29, 1995. *Aff. of Martha Bryant*, ¶ 6; *Defendants' Response to Plaintiff's Statement of Material Facts*, ¶ 15. On March 27, 1995, Ms. Bryant requested part of the day off from someone at Delbar. *Dep. of Martha Bryant*, p. 20. Specifically, Ms. Bryant stated, "My son is in the hospital and I've got to work things out." *Id.* at 21. Ms. Bryant

was denied time off and assessed a one-half point penalty for missing work to go to the hospital. *Aff. of Martha Bryant*, ¶ 9. Ms. Bryant was also penalized one-half point for missing part of the day on April 4, 1995 because she had to drive her son to a doctor's appointment in Cookeville. *Id.* ¶ 9. In addition, Ms. Bryant used vacation days on March 29 and April 11, 19, and 25 in order to help her son without incurring more penalties. *Id.* ¶ 10.

From May 30, 1995 until August 7, 1995, Ms. Bryant was on disability leave due to a slipped disc. *Id.* ¶ 12. She returned to work on August 8, 1995; however, Ms. Bryant was one hour late to work on August 9, 1995 because her back pain had returned. *Id.* ¶ 14. As a result, she was assessed a one-half point penalty. *Id.* Finally, Ms. Bryant missed a doctor's appointment scheduled for October 2, 1995 because Delbar would not excuse her from work. *Id.* ¶ 15.

By the end of 1995, Ms. Bryant had been penalized with six occurrences and was placed on probation. *See id.* ¶ 9; *Defendants' Response to Plaintiff's Statement of Material Facts*, ¶ 9. Because Ms. Bryant was on probation at the end of 1995, her six occurrences carried over into 1996 and she was not allowed a clean slate of zero occurrences. *Aff. of Martha Bryant*, ¶ 9; *Defendants' Response to Plaintiff's Statement of Material Facts*, ¶ 9. By April 8, 1996, Ms. Bryant had incurred two more occurrences— for a total of eight—and she was fired. *Id.* ¶ 8; *Defendants' Response to Plaintiff's Statement of Material Facts*, ¶ 8.

Ms. Bryant claims that Delbar should have excused her absences on March 27, April 4, and August 9 under the FMLA. Importantly, if any one of these absences had been excused under the FMLA, Ms. Bryant would have incurred only five and one-half occurrence points by the end of 1995 and she would not have been placed on probation. As a result, Ms. Bryant would have begun 1996 with a clean slate of zero occurrences and she would have been penalized with only two occurrence points by April 8, 1996. *De-*

---

1. Howard Bryant also worked for Delbar Products until he became ill. *See Dep. of (Howard)*

*Lester Bryant*, pp. 9, 15–16.

fendants' Response to Plaintiff's Statement of Material Facts, ¶ 10.

## III. Legal Analysis—Liability Under the FMLA

### A. Eligibility Under the FMLA

The FMLA establishes, among other things, the right of an eligible employee to receive up to twelve weeks of unpaid leave per year to care for a son or daughter who has a "serious health condition" or because of a "serious health condition that makes the employee unable to perform the functions" of his or her job. 29 U.S.C. § 2612(a)(1)(C), (D). Pursuant to his authority under the FMLA, the U.S. Secretary of Labor has issued regulations governing the implementation of leave entitlement. 29 C.F.R. § 825 (1997). Employers are prohibited from interfering with, restraining, or denying the exercise of (or attempt to exercise) any rights provided by the FMLA. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1). Any violation of the FMLA or its implementing regulations constitutes unlawful interference with, restraint, or denial of the exercise of rights provided by the FMLA. 29 C.F.R. § 825.220(b).

To be eligible for leave under the FMLA, an employee must have been employed by the employer from whom leave is requested for (1) at least twelve months and (2) at least 1250 hours of service during the previous twelve-month period. 29 U.S.C. § 2611(2)(A)(i), (ii). In addition, the employee must be employed at a worksite where fifty or more employees are employed by the employer within seventy-five miles of that worksite. See id. § 2611(2)(B)(ii). There is no dispute that Ms. Bryant was eligible for FMLA leave when she worked for the defendants. See Defendants' Response to Plaintiff's Statement of Material Facts, ¶¶ 4–5. Furthermore, there is no dispute that defendant Delbar is an "employer" within the meaning of the FMLA. 29 U.S.C. § 2611(4); Defendants' Response to Plaintiff's Statement of Material Facts, ¶ 3.

The defendants contend, however, that the time off requested by Ms. Bryant in March, April, and August of 1995 should not have qualified as FMLA leave. The defendants further contend that even if Ms. Bryant's absences were excused under the FMLA, she did not give them adequate notice of her need for leave as required by the FMLA. As noted above, if any one of Ms. Bryant's absences on March 27, April 4, or August 9 had been excused under the FMLA, Ms. Bryant would not have been fired on April 8, 1996. Thus, it is appropriate to examine each of these absences to determine if any of them should have been excused under the FMLA. If any one of them should have been excused, the Court's inquiry is at an end and summary judgment must be granted for Ms. Bryant on the issue of the defendants' liability.

### B. The Definitions of "Serious Health Condition" and "Son" Under the FMLA

On March 27, 1995, Ms. Bryant was penalized one-half point for missing part of the day to go to the hospital where her son was hospitalized with advanced kidney failure. Delbar was required to allow Ms. Bryant to take unpaid leave to care for Howard Bryant if he had a "serious health condition" and qualified as her "son" under the FMLA. 29 U.S.C. § 2612(a)(1)(C).

#### 1. The Definition of Serious Health Condition

█ The first issue is whether Howard Bryant had a "serious health condition" under the FMLA. "Serious health condition" is defined as "an illness ... that involves ... inpatient care in a hospital." *Id.* § 2611(11)(A). The regulations further define "inpatient care" to mean "an overnight stay" in a hospital. 29 C.F.R. § 825.114(a). There is no question that Howard Bryant was hospitalized with advanced kidney failure from March 26, 1995 through March 29, 1995. Thus, Howard Bryant had a "serious health condition" on March 27, 1995.

#### 2. The Definition of "Son"

█ The second issue is whether Howard Bryant met the definition of "son" under the FMLA on March 27, 1995. The FMLA defines "son" to include those who are "18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12)(B). First, there is

no question that Howard Bryant was over eighteen years of age in 1995.

Second, the regulations state that "incapable of self-care"

> means that the individual requires active assistance or supervision to provide daily self-care in *three or more* of the "activities of daily living (ADLs) or "instrumental activities of daily living" (IADLs). Activities of daily living include adaptive activities such as caring appropriately for one's grooming and hygiene, bathing, dressing and eating. Instrumental activities of daily living include cooking, cleaning, shopping, taking public transportation, paying bills, maintaining a residence, using telephones and directories, using a post office, etc.

29 C.F.R. § 825.113 (emphasis added). The parties dispute whether Howard Bryant was incapable of self-care in general, but they have not directly addressed whether Howard Bryant required active assistance or supervision to provide daily self-care in at least three ADLs or IADLs *while he was hospitalized.* The defendants contend that Howard Bryant was capable of self-care because he could feed himself, bathe himself, take his own medication, and use the bathroom by himself. *Memorandum in Support of Defendants' Motion for Summary Judgment,* p. 10 (citing *Dep. of (Lester) Howard Bryant,* pp. 23, 28, 44). The defendants further contend that Howard Bryant was capable of self-care because Ms. Bryant only assisted him with cooking, cleaning, and driving him to the doctor. *Id.* (citing *Dep. of Martha Bryant,* pp. 31–32, 36–38). Nevertheless, Howard Bryant necessarily was incapable of self-care while he was hospitalized.

First, it is only logical to conclude that Howard Bryant could not cook, clean, shop or take public transportation (more than three IADLs) while he was in the hospital. In his deposition, the defendants' attorney questioned Howard Bryant about his activities just before his hospitalization and while

he was in the hospital. Howard Bryant stated that he became dizzy and was passing out, so he drove himself to the emergency room. *Dep. of Howard Bryant,* at 19. He was checked into the hospital and given fluid pills to bring his blood pressure down. *Id.* at 22. He was not given any medication intravenously and he was able to feed himself. *Id.* at 23. However, he was unable to move around his hospital room very much and he stayed in bed most of the time. *Id.* at 23. Thus, even assuming that Howard Bryant could engage in ADLs—caring appropriately for his grooming and hygiene, bathing, dressing, and eating—he was in the hospital and almost certainly could not engage in IADLs.

Second, after Howard Bryant was released from the hospital "through at least the end of April 1995, he was extremely weak and tremulous and required the assistance of his mother for transportation, administration of medication and also for coordination of [his] therapeutic plan." *Decl. of Lee Ray Crowe, M.D.,* ¶ 10 (Howard Bryant's post-hospitalization physician); *see also* Dr. Crowe's office progress notes (dated April 4 through May 22, 1995) attached to his declaration. After he was released from the hospital, Howard Bryant also required Ms. Bryant's help with cooking and cleaning. *Aff. of Martha Bryant,* ¶ 5; *Dep. of Martha Bryant,* pp. 31–32, 36–38. The defendants do not dispute Ms. Bryant's testimony on this point. *Defendants' Response to Plaintiff's Statement of Material Facts,* ¶ 11. Because Howard Bryant required assistance with at least three IADLs—cooking, cleaning, and transportation[2]—after he was released from the hospital, he almost certainly required assistance with them while he was hospitalized.

Although this Court has found very few cases that discuss the definition of "incapable of self-care," in *Sakellarion v. Judge & Dolph, Ltd.,* 893 F.Supp. 800 (N.D.Ill.1995), the district court for the northern district of Illinois found that where the plaintiff had not submitted any medical records or other evidence indicating that her daughter was in-

---

**2.** The defendants have pointed out that Ms. Bryant drove her son, but did not assist him with taking public transportation. *Defendants' Response to Plaintiff's Motion for Partial Summary Judgment,* p. 2. Ms. Bryant has countered that the list of IADLs provided in the regulations is not comprehensive and furthermore, there is no public transportation in the rural community where she and her son live.

capable of self-care, the plaintiff's own assertion that her daughter needed to stay in bed was not sufficient evidence from which a jury could infer that her daughter was incapable of self-care. *Id.* at 807. In the instant case, however, Howard Bryant was actually hospitalized, the physician who treated him after he was released from the hospital submitted a declaration, and Ms. Bryant stated in her affidavit and deposition that her son needed her assistance with cooking and cleaning—a statement that the defendants do not dispute. Thus, the Court finds that Howard Bryant was "incapable of self-care" on March 27, 1995 when Ms. Bryant missed work to go to the hospital.

In addition to being over eighteen and incapable of self-care, Howard Bryant had to be "suffering from a ... physical disability" on March 27, 1995 to qualify as Ms. Bryant's "son" under the FMLA. The regulations provide that a physical disability means a "physical ... impairment" that "substantially limits" one or more of the "major life activities" of an individual as each of these terms is defined by the regulations issued by the Equal Employment Opportunity Commission under the Americans with Disabilities Act (ADA). 29 C.F.R. § 825.113(c)(2).

First, the ADA regulations define "physical impairment" as "[a]ny physiological disorder, or condition ... affecting ... [the] genito-urinary [system]." 29 C.F.R. § 1630.2(h)(1). Because Howard Bryant was suffering from advanced kidney failure, a condition affecting the genito-urinary system, he had a physical impairment under the ADA. *See Roush v. Weastec, Inc.,* 96 F.3d 840, 843–44 (6th Cir.1996) (finding that the plaintiff's kidney condition affected the genito-urinary system and was a physical impairment under the ADA); *McDonald v. Menino,* 1997 WL 106955, at *1–2 (D.Mass. Jan.3, 1997) (finding that a plaintiff who suffered from polycystic kidney disease and end stage renal failure had a disability under the ADA); *cf. Gilbert v. Frank,* 949 F.2d 637, 640–41 (2d Cir.1991) (stating that (1) the Rehabilitation Act defines the term "individual with handicaps" as "any person who ... has a

physical ... impairment which substantially limits one or more of such person's major life activities," (2) the regulations promulgated under the act define physical impairment to include "any physiological disorder or condition ... affecting ... [the] genito-urinary" system, and (3) "[w]e are inclined to view persons whose kidneys would cease to function without mechanical assistance, or whose kidneys do not function sufficiently to rid their bodies of waste matter without regular dialysis, as being substantially limited in their ability to care for themselves") (citations omitted).

Second, "major life activities" under the ADA include the ability to work. 29 C.F.R. § 1630.2(*l*). Third, with respect to working, "substantially limits" "means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.* § 1630.2(j)(3)(*l*). There is no question that Howard Bryant was substantially limited in his ability to work as of March 27, 1995. He was completely restricted in his ability to perform his job at Delbar because he was hospitalized. Moreover, after his hospitalization, Howard Bryant worked only a few more days in 1995 before taking extensive leaves and finally resigning from Delbar in 1996 due to his health condition.[3] *Aff. of Howard Bryant,* ¶ 2; *see Defendants' Response to Plaintiff's Statement of Material Facts,* ¶ 13. Thus, because Howard Bryant was over eighteen, incapable of self-care, and suffering from a physical disability on March 27, 1995, he met the FMLA's definition of "son."

In sum, on March 27, 1995 when Ms. Bryant left work early to see Howard Bryant in the hospital, he had a serious health condition and qualified as Ms. Bryant's son under the FMLA. Therefore, if Ms. Bryant gave the defendants adequate notice of her need for leave on March 27, her absence should have been excused under the FMLA and she should not have been assessed one-half point for absenteeism.

---

**3.** Howard Bryant received a kidney transplant in August of 1997 and stopped dialysis treatments

at that time. He plans to return to work in August of 1998. *Affidavit of Howard Bryant,* ¶ 2.

## C. Adequate Notice

Although the FMLA requires employees to notify their employers of the need for foreseeable leave, 29 U.S.C. § 2612(e)(1), the act itself does not contain a notice requirement for unforeseeable leave. The regulations, however, provide that "[w]hen the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable." 29 C.F.R. § 825.303(a). It is expected that the employee "will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances...." *Id.* Moreover,

> [t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee ... will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

*Id.* § 825.303(b).

In *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758 (5th Cir.1995),[4] the Fifth Circuit held that in determining what is "practicable," in terms of both the content and timing of notice for unforeseeable leave, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Id.* at 764. Citing *Manuel*, the Seventh Circuit held that where the plaintiff filled out a leave request form provided by her employer, indicated on the form that she needed to take leave for a medical reason, and attached a doctor's note requiring her to take time off, she had provided "sufficient information to put [her employer] on notice that this was a possible FMLA leave situation." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir.1997) (citing *Manuel*, 66 F.3d at 760, 764).

Similarly, in *Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028 (M.D.Tenn.1995), the court held that where the plaintiff informed her employer that she could not come to work because her minor daughter was sick and, after she returned to work, reiterated to her employer that her child had been sick, the plaintiff gave her employer sufficient notice that her unforeseeable leave potentially qualified under the FMLA. *Id.* at 1038–39; *see Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075, 1086–87 (E.D.Mich.1997) (finding that an employee's letter stating that he was taking leave because of the effect of his son's suicide on his health was sufficient to apprise his employer that the FMLA may have covered his leave).

Unlike the *Price, Brannon,* and *Stubl* courts, the courts in *Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973 (5th Cir.1998) and *Reich v. Midwest Plastic Eng'g. Inc.*, 1995 WL 514851 (W.D.Mich. July 26, 1995), found that the plaintiffs did not provide adequate notice of their need for unforeseeable leave. In *Satterfield*, the plaintiff's mother delivered a note, written by the plaintiff, to the plaintiff's employer, Wal–Mart, which advised that the plaintiff "was having a lot of pain in her side." *Satterfield*, 135 F.3d at 980. In addition, the plaintiff's mother told Wal–Mart that the plaintiff was sick. *Id.* Although the plaintiff telephoned her doctor's office to schedule an appointment, she made no attempt to contact Wal–Mart and advise them of her status or her doctor's appointment. *Id.* In fact, the plaintiff did not contact Wal–Mart until twelve days after her initial absence. *See id.* Furthermore, the plaintiff was familiar with Wal–Mart's leave policies and recently had incurred three unexcused absences. *Id.*

The court held that "no rational trier of fact could conclude that the meager information Satterfield imparted to Wal–Mart ... was sufficient to require Wal–Mart to seek additional information about her condition,

---

4. It is important to note that *Manuel* was decided under the interim regulations promulgated by the Department of Labor. The interim regulations contained very little instruction regarding unforeseeable leave; however, *Manuel* discusses the final regulations and the outcome in *Manuel* would have been the same under the final regulations. *Manuel*, 66 F.3d at 762–64.

and whether it qualified for FMLA protection." *Id.* at 980–81. The court also noted that requiring Wal–Mart to investigate whether FMLA leave was appropriate in the plaintiff's situation "is quite inconsistent with the purposes of the FMLA, because it is not necessary for the protection of employees who suffer from 'serious health conditions', and would be unduly burdensome for employers, to say the least." *Id.* at 981.

Similarly, in *Reich*, the plaintiff did not "communicate sufficient information to inform [her employer] of her condition [ (chicken pox) ] with sufficient detail to make it evident to [her employer] that her leave was as the result of a 'serious health condition'. . . ." *Reich*, 1995 WL 514851 at *4. First, she did not communicate that she was "under the continuing treatment of a health care provider" or that she "had received inpatient care." *Id.* Second, the plaintiff did not give notice to her employer "as soon as practicable" since she was able to run an errand on one of the days that she failed to call into work. *Id.*

■ In the case at bar, Martha Bryant's son was hospitalized on March 26, 1995. On March 27, 1995, Martha Bryant missed part of a work day to go to the hospital. She told her employer, "My son is in the hospital and I've got to work things out." *Dep. of Martha Bryant,* p. 21. She later provided Delbar with a doctor's excuse which indicated that her son was hospitalized from March 27 through March 29 and would not be able to work for two weeks. *Aff. of Martha Bryant,* ¶ 8; *Ex. A to Aff. of Martha Bryant; Defendants' Response to Plaintiff's Statement of Material Facts,* ¶ 15. Delbar did not excuse her leave of absence and she was assessed one-half of a penalty point under Delbar's absenteeism policy.

Like the plaintiffs whose notice of need to take unforeseeable leave was found to be adequate in *Price* and *Brannon,* Martha Bryant imparted information to Delbar that was sufficient to reasonably apprise Delbar of her request to take time off due to her son's serious health condition. Like the plaintiff in *Price,* Ms. Bryant informed Delbar that she needed to take leave for a medical reason (her son's hospitalization) and she provided Delbar with a doctor's excuse which indicated that her son had, in fact, been hospitalized. Furthermore, just as the plaintiff in *Brannon* informed her employer that her daughter was sick, Ms. Bryant informed Delbar that her son was sick by telling Delbar that he had been hospitalized. In contrast to the plaintiff in *Satterfield,* Ms. Bryant communicated directly with Delbar on the day she needed time off, rather than waiting twelve days, and provided Delbar with concrete, not "meager," information as to why she needed time off. In addition, unlike the plaintiff in *Reich,* Ms. Bryant made it clear to Delbar that her son was receiving inpatient care and gave Delbar notice the day after her son was hospitalized.

Thus, Martha Bryant provided Delbar with adequate notice that she was requesting unforeseeable leave in a potentially FMLA-qualifying situation. At that time, the burden shifted to Delbar to "obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). Delbar, however, did not request any further information from Ms. Bryant concerning her son's condition. *See Defendants' Response to Plaintiff's Statement of Material Facts,* ¶ 17.

### D. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–1480 (6th Cir. 1989). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. In responding to a motion for summary judgment, the nonmoving party cannot rest on its pleadings, but must present some "specific facts showing that there is a genuine issue for trial." *Id.*

In the case at bar, both parties have moved for summary judgment on the issue of defendant Delbar's liability under the FMLA. As established above, there is no genuine issue of material fact regarding whether Howard Bryant had a "serious

health condition" and was Ms. Bryant's "son" under the FMLA. There is also no genuine issue of material fact regarding whether Martha Bryant gave Delbar adequate notice that the leave she requested might have been excused under the FMLA.

Thus, Delbar violated the FMLA by assessing Ms. Bryant a one-half point penalty for leaving work early on March 27, 1995. Ms. Bryant is therefore entitled to summary judgment on the issue of Delbar's liability under the FMLA.[5]

### IV. Legal Analysis—Individual Liability Under the FMLA

#### A. Individual Liability Exists Under the FMLA

 The defendants contend that the FMLA does not provide for individual liability. The Sixth Circuit has not directly addressed this issue; however, the majority of courts that have reached this issue have held that individual liability does exist under the FMLA. *See, e.g., Eldridge v. Porelon/Micropore, Inc.,* No. 2:97–0053, slip op. at 17 (M.D.Tenn. June 9, 1998); *Rupnow v. TRC, Inc.,* 999 F.Supp. 1047, 1048 (N.D.Ohio 1998); *Stubl v. T.A. Systems, Inc.,* 984 F.Supp. 1075, 1084 (E.D.Mich.1997); *Johnson v. A.P. Products, Ltd.,* 934 F.Supp. 625, 629 (S.D.N.Y. 1996); *Knussman v. Maryland,* 935 F.Supp. 659, 664 (D.Md.1996); *Freemon v. Foley,* 911 F.Supp. 326, 332 (N.D.Ill.1995); *Reich v. Midwest Plastic Eng'g, Inc.,* 1995 WL 478884, at *5–6 (W.D.Mich. June 6, 1995). *But see Frizzell v. Southwest Motor Freight, Inc.,* 906 F.Supp. 441, 449 (E.D.Tenn.1995) (holding that the FMLA does not provide for individual liability because Title VII and the FMLA define "employer" similarly, and there is no individual liability under Title VII).

Unlike the *Frizzell* court, most courts have found that the definition of "employer" under the FMLA more closely tracks the definition of "employer" found in the Fair Labor Standards Act (FLSA), than the definition of "employer" found in Title VII. *See, e.g., Stubl,* 984 F.Supp. at 1084 (stating that "the definition of " 'employer' " under the FMLA is comparable to the definition of employer under the [FLSA]"). Indeed, the definitions of employer under the FMLA and FLSA are "nearly identical." *Id.* The FMLA defines an employer to include "any person who acts, directly or indirectly, in the interest of an employer," 29 U.S.C. § 2611(4)(A)(ii)(I), while the FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer," 29 U.S.C. § 203(d). There is no question that individual liability exists under the FLSA. *See, e.g., Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973); *Stubl,* 984 F.Supp. at 1085 n. 10.

Because the definitions of "employer" under the FMLA and the FLSA are so similar and because individual liability exists under the FLSA, the *Stubl* court held that individual liability for corporate officers, managers, and supervisors for violations of the FMLA is within the FMLA's definition of employer. *Stubl,* 984 F.Supp. at 1085. Therefore, in accordance with the reasoning of the *Stubl* court, the defendants' motion for summary judgment on the issue of individual liability under the FMLA is denied.

#### B. Bill Caruthers' Liability Under the FMLA

 The defendants contend that even if individual liability exists under the FMLA, Bill Caruthers is not liable because he "did nothing to interfere with Plaintiff's FMLA leave and did not have the authority to grant FMLA leave." *Memorandum in Support of Defendants' Motion for Summary Judgment,* p. 20. Thus, the defendants are seeking summary judgment on the issue of Mr. Caruthers' liability under the FMLA.

Bill Caruthers' deposition reveals the following facts. When Ms. Bryant was employed by Delbar, Mr. Caruthers "had all the personnel responsibilities in the plant." *Dep.*

---

5. If Ms. Bryant had not been assessed a one-half occurrence point on March 27, 1995, she would have incurred only five and one-half occurrence points by the end of 1995, instead of six and she would have started 1996 with a clean slate of zero occurrences. If this had happened, Ms. Bryant would have incurred only two occurrence points as April 8, 1996 and she would not have been fired. Consequently, there is no need to address whether the Ms. Bryant's other absences should have been excused under the FMLA.

*of Bill Caruthers,* p. 7. The personnel matters he handled included giving warnings for absenteeism. *Id.* at 9. In regard to terminating employees, Mr. Caruthers was aware of any decision to terminate an employee and was sometimes part of the termination decision. *Id.* at 10. When employees completed FMLA forms, they were sometimes turned in to him. *Id.* at 15. The forms were then forwarded to corporate personnel in Perkasie, PA, and corporate personnel decided whether to grant FMLA leave. *Id.* Mr. Caruthers could grant personal leave, but decisions regarding FMLA leave were made by corporate personnel. *Id.* at 24. He was not heavily involved in day-to-day attendance matters. *Id.* at 36.

Mr. Caruthers was not Ms. Bryant's immediate supervisor, *see id.* at 26, but when she needed to leave work early she could have asked him for permission, *id.* at 26–27. Mr. Caruthers recalls discussions with Ms. Bryant about taking some leave for which she was given no occurrences. *Id.* at 34. He met with Ms. Bryant one week before she was fired and explained to her that her next occurrence point would result in dismissal because she had already incurred seven-and-a-half occurrence points. *Id.* at 56; *Id.* Ex. 2. Mr. Caruthers also had a couple of other conversations with Ms. Bryant and warned her about her absenteeism problems. *See id.* at 57. When Ms. Bryant incurred another half point, her personnel record was faxed to Pennsylvania. *Id.* at 61. Shortly thereafter, Mr. Caruthers had a conference call with Sandy Ashman, the Pennsylvania head of personnel, and Alan Wiseburg, then president of Delbar Products, to make a decision about whether to terminate Ms. Bryant. *See id.* at 61. The decision to fire Ms. Bryant was approved by corporate personnel and Mr. Caruthers terminated her. *Id.* at 59–60.

Under the FMLA, the definition of "employer" includes "any person who acts, directly or indirectly, in the interest of an employer" to any of the employer's employees. 29 U.S.C. § 2611(4)(A)(ii)(I). Courts have looked to FLSA case law in determining whether an individual is an employer under the FMLA. *See, e.g., Freemon v. Foley,* 911 F.Supp. 326, 331 (N.D.Ill.1995);

*Reich v. Midwest Plastic Eng'g, Inc.,* 1995 WL 478884, at *5–6 (W.D.Mich.1995). Thus, the *Freemon* court stated that "even if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual." *Freemon,* 911 F.Supp. at 331 (citing *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 966 (6th Cir.1991)).

In *Freemon,* two of the individual defendants were not directors or officers of the defendant hospital. *Id.* Nevertheless, the court reasoned that because (1) they recommended that the plaintiff be terminated due to absenteeism, (2) they were directed to suspend the plaintiff, and (3) one of them actually terminated the plaintiff, they were individually liable under the FMLA. *Id.* The court concluded that "the FMLA extends to all those who controlled 'in whole or in part' [the plaintiff's] ability to take a leave of absence and return to her position." *Id.; see also Johnson v. A.P. Products, Ltd.,* 934 F.Supp. 625, 629 (S.D.N.Y.1996) (dismissing the plaintiff's claim against an individual defendant because the complaint merely alleged that the defendant was a manager and that she and the defendant company fired the plaintiff).

In the instant case, several factors cause this Court to conclude that defendant Caruthers was an "employer" under the FMLA. First, Mr. Caruthers stated in his deposition that he had all "personnel responsibilities" in Delbar's plant. Thus, if the FMLA's definition of employer is given its plain meaning, Mr. Caruthers was acting "directly or indirectly" in Delbar's interest. Second, Mr. Caruthers had the power to grant personal leave and excused Ms. Bryant from work on occasion, indicating that he controlled, at least in part, her ability to take a leave of absence and return to her job.

Third, it is unclear from Mr. Caruthers deposition whether he, like the individual defendants in *Freemon,* recommended that corporate personnel fire Ms. Bryant. Nevertheless, Mr. Caruthers discussed Ms. Bryant's absenteeism problems with her more than once and warned her about taking

unexcused leave. Furthermore, Mr. Caruthers had a conference call about Ms. Bryant with the individuals who ultimately approved her termination. Fourth, like the defendants in *Freemon*, Mr. Caruthers was directed to terminate Ms. Bryant and did, in fact, fire her. Thus, Mr. Caruthers meets the FMLA's definition of "employer" and is liable, along with Delbar Products, under the FMLA. Consequently, the defendants' motion for summary judgment on the issue of defendant Caruthers' liability is denied, and the plaintiff's motion for summary judgment on the issue of defendant Caruthers' liability is granted.

## V. The Plaintiff's Retaliation Claim

Ms. Bryant claims that she was fired in retaliation for her use of FMLA leave. *Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment*, p. 26. The FMLA provides that "[i]t shall be unlawful for any employer to discharge ... any individual for opposing any practice made unlawful by" the FMLA. To determine whether a prima facie FMLA retaliation claim has been established, various courts, including courts within the Sixth Circuit, have applied the prima facie requirements of other workplace retaliation statutes, such as Title VII. *See, e.g., Eldridge v. Porelon/Micropore, Inc.*, No. 2:97–0053, slip op. at 20–21 (M.D.Tenn. June 9, 1998); *Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075, 1090 (E.D.Mich. 1997); *Petsche v. Home Federal Savings Bank, Northern Ohio*, 952 F.Supp. 536, 537–38 (N.D.Ohio 1997); *Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 259 (N.D.Miss.1995), *aff'd*, 74 F.3d 91 (5th Cir.1996).

▮ Accordingly, to establish a prima facie retaliation claim under the FMLA, Ms. Bryant must demonstrate that (1) she engaged in an activity protected by the FMLA, (2) her exercise of her rights under the FMLA was known to the defendants, (3) the defendants thereafter took an employment action adverse to her, and (4) there was a causal connection between the protected activity and the adverse employment action. *Eldridge*, slip op. at 21; *Stubl*, 984 F.Supp. at 1090 (citing *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990)).

▮ Because this Court has already found that Ms. Bryant is entitled to summary judgment on the issue of the defendants' liability under the FMLA, she has established the first three elements of her prima facie case: Ms. Bryant took FMLA leave, the defendants had adequate notice that her leave was protected, and she was fired in April of 1996.

Furthermore, Ms. Bryant has established the fourth element of her prima facie case because the defendants have offered no reasons, other than absenteeism, for her termination. Indeed, Mr. Caruthers stated in his deposition that the sole reason for firing Ms. Bryant was her absenteeism. *Dep. of Bill Caruthers*, p. 19. The defendants should have excused Ms. Bryant's absence on March 27, 1995 under the FMLA. As a direct result of their failure to do so, Ms. Bryant was fired. Thus, Ms. Bryant has established a prima facie case of retaliation under the FMLA.

Once Ms. Bryant has established a prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Stubl*, 984 F.Supp. at 1091. As noted above, the defendants have offered no reason for Ms. Bryant's termination other than her absenteeism record. Thus, the defendants cannot meet their burden. Consequently, the defendants' motion for summary judgment on Ms. Bryant's retaliation claim is denied, and Ms. Bryant's motion for summary judgment on the issue of whether she was fired in retaliation for taking leave under the FMLA is granted.

## VI. Jury Trial

▮ The defendants have moved to deny the plaintiff's demand for a jury trial. First, they contend that Ms. Bryant is seeking essentially equitable remedies and Sixth Circuit law makes it clear that when a plaintiff seeks only equitable relief, she is not entitled to a jury trial. Second, the defendants argue that both the FMLA and its regulations are devoid of any reference to the right to a jury trial. Third, the defendants maintain that the FMLA and its regulations consistently refer to an award or judgment being made by the court. The plaintiff contends that she is seeking both legal and equitable remedies.

Furthermore, the plaintiff argues that the FMLA and the FLSA contain similar damages provisions and, although the FLSA is silent regarding the right to a jury trial, courts have found that there is a right to a jury trial under the FLSA.

In a very brief opinion, the United States District Court for the Eastern District of Tennessee held that there is no right to a jury trial under the FMLA. *Hicks v. Maytag Corp.*, 1995 WL 908171, at *1 (E.D.Tenn. July 13, 1995). The court reasoned that the "FMLA envisions only equitable remedies. Further, [the] FMLA does not provide a statutory right to a jury trial." *Id.* More recently, however, the United States District Court for the Southern District of Georgia stated in dicta that "this Court can only conclude that the United States Magistrate Judge in *Hicks* ... was incorrect when he declared that there is no right to a jury trial in an FMLA case." *Helmly v. Stone Container Corp.*, 957 F.Supp. 1274, 1276 (S.D.Ga. 1997). The *Helmly* court went on to find that there is a right to a jury trial under the FMLA, but any portion of a plaintiff's claim that sounds in equity must be decided by the court. *Id.; accord Souders v. Fleming Cos.*, 960 F.Supp. 218, 218 (D.Neb.1997) (stating that the plaintiff was entitled to a jury trial on the issues of liability and back pay, but the court would decide "equitable issues such as reinstatement and front pay").

The *Helmly* court reasoned that the FMLA is a closer companion to the FLSA than to Title VII. *Helmly*, 957 F.Supp. at 1275. The FLSA's damage provisions, 29 U.S.C. § 216(c), are nearly identical to those found in the FMLA, 29 U.S.C. § 2617(a).[6] Although the FLSA contains no explicit right to a jury trial, the Supreme Court has held that such a right exists under the FLSA. *Helmly*, 957 F.Supp. at 1274 (citing *Lorillard v. Pons*, 434 U.S. 575, 576, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)). Furthermore, "[i]n reviewing the legislative history of the FMLA,

it is all too certain that Congress did intend to align the procedures of the FMLA with those of the FLSA." *Id.* at 1275 (citing Senate Comm. on Labor and Human Resources Majority Rep. On 1993 S.5, Sections I and IV, S.Rep. 103–3 (1993); House Comm. on Educ. and Labor Rep. on 1993 H.R. 1, H.R.Rep. 103–8(I), U.S.Code Cong. & Admin.News 1993, 3). In addition, the legislative history for a subsequent bill that extends FMLA protections to congressional employees indicates that Congress intended to "silently include the jury trial right" in the FMLA. *Id.* at 1276 (citing 139 Cong.Rec. E–1597 (daily ed. June 23, 1993)).

In the case at bar, Ms. Bryant has requested the following: (1) a declaration that the defendants' conduct violates the FMLA, (2) an injunction enjoining the defendants from any conduct that violates her rights under the FMLA, (3) damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to her due to her termination, plus interest, (4) liquidated damages equal to the sum of #3 plus interest, (5) other appropriate equitable relief, including employment, reinstatement, promotion, or front pay in lieu of reinstatement, and (6) costs, reasonable attorneys' fees, and reasonable expert witness fees. Given the lack of precedent in this area and the similarities between the FLSA and the FMLA, this Court adopts the reasoning of the *Helmly* court and finds that the plaintiff is entitled to a jury trial under the FMLA. Accordingly, the defendants' motion to deny the plaintiff's jury demand is denied. This case will proceed to a jury trial on the issues of back pay and liquidated damages, and this Court will decide the remaining equitable issues, such as reinstatement and front pay.

### VII. Motions to Strike

### A. Plaintiff's Motion to Strike

■ Plaintiff has moved to strike defendants' response to plaintiff's statement of

---

**6.** An employer who violates the FMLA is liable for (1) "any wages, salary, employment benefits, or other compensation denied or lost to [an] employee by reason of the violation," and (2) interest on the amount described in #1. 29 U.S.C. §§ 2617(a)(1)(A)(i)(*l*), (a)(1)(A)(ii). In addition, the employer is liable for liquidated damages in the amount described in §§ 2617(a)(1)(A)(i)(*l*), (a)(1)(A)(ii), unless the court finds that the employer's violation of the FMLA was in good faith. *Id.* § 2617(a)(1)(A)(iii). If the court so finds, the court can reduce the employer's liability to the amount and interest described in §§ 2617(a)(1)(A)(*l*)(i), (a)(1)(A)(ii). Finally, an employer who violates the FMLA is liable "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." *Id.* § 2617(a)(1)(B).

material facts because it is not in technical compliance with Local Rule 8(b)(7)(c). Plaintiff claims that several of defendants' responses are unresponsive and do not contain responses permitted by local rule 8(b)(7)(c). This Court finds that even if the defendants' responses were not in technical compliance with rule 8, they fall within the spirit of rule 8. Therefore, the plaintiff's motion to strike is denied.

## B. Defendants' Motion to Strike

The defendants' have moved to strike two documents submitted to the Court by Ms. Bryant: a favorable decision for Ms. Bryant from the Tennessee Department of Employment Security (DES) and a document submitted to the DES Board of Review by Delbar in Ms. Bryant's appeal hearing. Ms. Bryant relies on these documents in her affidavit, statement of material facts, and motion for summary judgment. The defendants contend that these documents must be stricken from the record because they are absolutely privileged for all purposes except the processing of an unemployment benefits claim under Tenn.Code Ann. § 50–7–701. The plaintiff responds that the DES decision in Ms. Bryant's case is a public record under Tenn.Code Ann. § 4–5–218(a)(1), and that documents submitted in hearings before the Board of Review are open to the public for inspection under Tenn.Code. Ann. § 50–7–701(a)(1)(B)(iv).

First, under the Tennessee Uniform Administrative Procedures Act (TAPA), agencies must make agency decisions "available for inspection and copying." Tenn.Code Ann. § 4–5–218(a)(1) (Supp.1997). An "agency" is defined in pertinent part as "any . . . unit of state government authorized or required by any statute or constitutional provision to make rules or to determine contested cases." *Id.* § 4–5–102 (1991). Thus, the DES is an agency under the TAPA and decisions by the DES Board or Review must be made available for inspection and copying. If the decisions must be available for copying, then they are not privileged, as the defendants contend. Therefore, the defendants' motion to strike the DES's decision from the record is denied.

Second, as the plaintiffs claim, Tenn.Code. Ann. § 50–7–701(a)(1)(B)(iv) (Supp.1997) provides that "[a]ny documents . . . introduced into the record at any hearing before . . . the [DES] board of review shall not be held confidential and shall be open to public inspection, unless expressly prohibited by other state or federal law or by administrative or judicial protective order." The defendants have not pointed to any state or federal law or administrative or judicial protective orders that make the documents they submitted at Ms. Bryant's DES Board of Review hearing confidential. Consequently, the defendants' motion to strike a document submitted by Delbar in Ms. Bryant's Board of Review hearing is denied.

## VIII. Motion for Oral Argument

Given this Court's rulings on the pending motions before the Court, the plaintiff's motion for oral argument is denied.

## IX. Conclusion

For the reasons set forth above, the Court GRANTS the plaintiff's motion for partial summary judgment and DENIES the defendants' motion for summary judgment or, in the alternative, partial summary judgment. The Court finds that defendant Delbar Products, Inc. is liable under the FMLA. Furthermore, the Court finds that individual liability exists under the FMLA and that defendant Caruthers is liable under the FMLA. In addition, the Court finds that the plaintiff was fired in retaliation for taking leave under the FMLA. Moreover, the Court finds that the plaintiff is entitled to a jury trial under the FMLA and denies the defendants' motion to deny the plaintiff's jury demand. This case will proceed to trial on the issue of damages. Finally, this Court denies both the plaintiff's and the defendants' motions to strike and denies the plaintiff's request for oral argument.

An appropriate order will enter.

### ORDER

Before the Court are the plaintiff's motion for partial summary judgment; the defendant's motion for summary judgment or, in the alternative, partial summary judgment; the defendants' motion to deny the plaintiff's

jury demand; motions to strike by both the plaintiff and the defendants; and the plaintiff's motion for oral argument. For the reasons stated in the accompanying memorandum, the Court hereby (1) GRANTS the plaintiff's motion for partial summary judgment and DENIES the defendants' motion for summary judgment, (2) DENIES the defendants' motion to deny the plaintiff's jury demand, (3) DENIES both the plaintiff's and the defendants' motions to strike, and (4) DENIES the plaintiff's motion for oral argument.

The Court finds as follows. First, defendant Delbar Products, Inc. is liable to the plaintiff under the Family and Medical Leave Act of 1993 (FMLA). Second, individual liability exists under the FMLA and the individual defendant, Mr. Bill Caruthers, is liable to the plaintiff under the FMLA. Third, the plaintiff was fired in retaliation for her use of FMLA leave. Fourth, the plaintiff is entitled to a jury trial under the FMLA.

It is so ORDERED.